**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **PATRICK THORNTON AND** | § | |
| **JESSICA THORNTON,** | § | |
| **Plaintiff,** | § | |
| | § | **Civil Action No. 3:23-cv-00043-G** |
| **v.** | § | |
| | § | |
| **AAA COLORADO, INC. AND** | § | |
| **SAFECO INSURANCE COMPANY** | § | |
| **OF AMERICA,** | § | |
| **Defendants.** | § | |

**PLAINTIFFS' AMENDED COMPLAINT**

Patrick Thornton and Jessica Thornton ("Plaintiffs") file this *Plaintiff's Amended Complaint* against AAA Colorado, Inc. and Safeco Insurance Company of America and respectfully show the Court:

## I.    PARTIES

3.    Plaintiff Patrick Thornton is an individual who resides in Texas and is an insured under a renters insurance policy at issue in this suit.

4.    Plaintiff Jessica Thornton is an individual who resides in Texas and is an insured under a rental insurance policy at issue in this suit.

5.    Defendant AAA Colorado, Inc. ("AAA") is a Colorado Corporation that is in the business of selling insurance policies to consumers.  AAA sold the renters insurance policy at issue in this suit and acted as agent for Safeco Insurance Company of America through the insurance claims process.

6.    Safeco Insurance Company of America ("Safeco") is a Colorado insurance company and insurer under the renters policy.

## II.    JURISDICTION AND VENUE

7.    This Court has subject matter jurisdiction under over this matter under federal diversity jurisdiction because Plaintiffs do not share state citizenship with Defendants and the amount in controversy exceeds $75,000.00.

8.    Plaintiffs are citizens of the State of Texas.

9.    Defendant AAA is a Colorado corporation with its principal place of business in Colorado.  Therefore, AAA is a citizen of the State of Colorado.

10.    Defendant Safeco is a New Hampshire corporation with its principal place of business in Massachusetts.  Therefore, Safeco is a citizen of New Hampshire and Massachusetts.

11.    This Court has personal jurisdiction over Defendants in this matter because Defendants purposely availed themselves to the jurisdiction of Texas by committing one or more torts in Texas, which form the basis of Plaintiffs' causes of action against them, and the exercise of jurisdiction comports with traditional notice of fair play and substantial justice.  TEX. CIV. PRAC. & REM CODE §17.042; *CSR Ltd. v. Link*, 925 S.W.2d 591, 594 (Tex. 1996).

12.    Specifically, Defendant AAA in in its individual capacity and Safeco or through AAA as its agent, violated the Texas Insurance Code, the Colorado Consumer Protection Act, the Texas Deceptive Trade Practices Act, and committed negligence through misrepresentations of coverage through the renter's insurance policy at issue.  Defendants had a reasonable expectation to be hailed into a court in Texas because (1) the contemplated transaction was to insure the move of personal property from Colorado to Texas and (2) Defendants made continued misrepresentations regarding the insurance policy and the claims process that were directed at Plaintiffs in Texas.

13.    Venue is proper in this Judicial District because it is the location in which a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred.  *See* 28 U.S.C. § 1331(b)(2).

### III.    SUMMARY OF FACTS

14.    In the summer of 2021, Patrick and Jessica Thornton (the "Thorntons") were planning a cross-country move from their home in Centennial, Colorado to Irving, Texas.  To protect against the destruction of all of their personal belongings during the move, Patrick Thornton contacted AAA of Colorado Inc. ("AAA") to obtain an insurance policy that would, among other things, cover their personal property while it was being transported as part of their move.  The insurance agent who discussed with Mr. Thornton on what policy would provide such coverage was Jacob Peters.  During their conversation, Mr. Peters expressly represented that AAA would provide an insurance policy with such coverage.  Based upon these representations, the Thorntons proceeded with purchasing the Renters Policy from AAA.  A true and correct copy of the Renters Policy is attached hereto as Exhibit A.

15.    On or about August 9, 2021, the Thorntons loaded their household furnishings and other personal property (the "Property") onto a moving truck operated by U-Pack.  The Thorntons also retained a company named Moving Staffers to assist with the move.

16.    On or about August 26, 2021, the Property arrived at the Thorntons' home in Irving, Texas badly damaged and or destroyed.  It is estimated that the value of the Property that was lost is $27,000.00.  Because of the losses suffered, the Thorntons made a claim with Moving Staffers.  Moving Staffers offered $2,013.00 to settle the claim.

17.    Mr. Thornton's initial reaction to Moving Staffer's offer was to reject it.  However, before rejecting the offer, Mr. Thornton determined that it was first appropriate to first contact Mr.

Jacobs at AAA to discuss what should be done as AAA had issued the Renters Policy that purportedly covered the damage to the Property.

18.    On or about September 28, 2021, Mr. Thornton spoke to Mr. Jacobs about the offer from Moving Staffers.  During that conversation Mr. Thornton explained that he planned to not accept the offer from Moving Staffers.  In response, Mr. Jacobs advised Mr. Thornton that he should accept the offer from Moving Staffers.  Mr. Jacobs further assured that once a claim was made on the Renters Policy, Safeco would "subrogate" the claim and seek to recover the remainder from Moving Staffers on his behalf.  Based upon these representations, Mr. Thornton was led to believe that Safeco would be paying out on a claim for the losses suffered and that accepting the payment Moving Staffers would not prejudice any rights he may have to recover for the losses he suffered.  As a result, Mr. Thornton accepted Moving Staffer's offer.

19.    On or about September 29, 2021, Mr. Thornton made a claim under the Renters Policy.  The following day, on September 30, 2021, to the Thorntons' surprise and contrary to Mr. Jacobs's prior representations, that claim was denied.  A true and correct copy of that denial letter (the "Denial Letter") is attached hereto as Exhibit B.

20.    In the Denial Letter, Safeco explained that the reason for the denial is that the Renters Policy did not provide coverage for damages caused by a person or organization holding, storing or transporting property for a fee.  In reviewing the Denial Letter, it had become clear to the Thorntons for the first time that the Mr. Jacobs had misrepresented what losses the Renters Policy would cover, both when discussing the purchase of the Renters Policy and when AAA advised them to accept the settlement offer from Moving Staffers.  Such misrepresentations induced the Thorntons into purchasing a Renters Policy that did not provide the coverage they needed and induced them to accept an offer of settlement from Moving Staffers.

21.     On November 16, 2021, the undersigned counsel sent a demand letter to AAA and a follow up demand letter to both AAA and Safeco and AAA on February 29, 2022, advising of the issues and AAA and Safeco's respective liability.  To date, neither AAA nor Safeco has acknowledged any wrongdoing or made any offers to resolve these issues.

22.     Plaintiffs now file this suit asserting violations of the Texas Insurance Code, the Texas Deceptive Trade Practices Act, the Colorado Consumer Protection Act, and common law negligence under Colorado and Texas law.

### IV.    CAUSES OF ACTION

**a. Cause of Action – Violations of the Texas Insurance Code and the Texas Deceptive Trade Practices Act.**

23.     The foregoing paragraphs are incorporated by reference.

24.     Plaintiff asserts a cause of action for violations of the Texas Deceptive Trade Practices Act ("DTPA") for violations of Chapter 541 of the Insurance Code.

25.     To state a claim under the DTPA are a plaintiff must show: (1) the plaintiff is a consumer; (2) the defendant committed acts in connection with the purchase or lease of any goods or services; (3) the defendant's acts were false, misleading or deceptive; and (4) the acts were a producing cause of plaintiff's injuries.  *Amstadt v. U.S. Brass Corp.,* 919 S.W.2d 644, 649 (Tex.1996).

26.     Here, Plaintiffs are consumers under the DTPA because they are individuals acquiring goods and services from AAA and Safeco.

27.     AAA and Safeco committed acts in violation of the DTPA by violating Chapter 541 of the Texas Insurance Code.  Specifically, AAA and Safeco made an untrue statement of material fact of the Renters Policy.  Tex. Ins. Code §541.061(a).

28.     AAA, on its behalf and as insurance agent for Safeco, represented that once a claim was made on the Renters Policy, Safeco would "subrogate" the claim and seek to recover the remainder from Moving Staffers on his behalf.  In other words, Mr. Thornton was told that his claim would be paid in full if he accepted the settlement offer from Moving Staffers.  However, such representation was false because no claim was ever paid.

29.     As a result of AAA's misrepresentations regarding the Renters Policy, the Thorntons were coerced into accepting a settlement offer from Moving Staffers that only covered a tiny fraction of the total amount of losses they suffered.  Safeco, knowing that the Thorntons had accepted a settlement offer with Moving Staffers, is now attempting to benefit from it by shifting liability to Moving Staffers.

30.     As a result, the Thorntons have suffered economic losses equal to the value of the Property.  Such representations were made knowingly and in bad faith, which entitles the Thorntons to a damage award of up to three times the amount of economic damages under applicable law. Finally, the Thorntons have had to retain the services of the undersigned counsel to assist with these issues and are entitled to recover their attorneys' fees.

31.     All conditions precedent to Plaintiff's recovery have been performed, have occurred, or have been waived.

**b.  Cause of Action – Violations of the Colorado Consumer Protection Act.**

32.     The foregoing paragraphs are incorporated by reference.

33.     "To state a private cause of action under the Colorado Consumer Protection Act , a plaintiff must allege: (1) that the defendant engaged in an unfair or deceptive trade practice; (2) that the challenged practice occurred in the course of defendant's business, vocation, or occupation; (3) that it significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property; (4) that the plaintiff suffered injury in fact to a legally

protected interest; and (5) that the challenged practice caused the plaintiff's injury." *Rees v. Unleaded Software, Inc.*, 383 P.3d 20, 27 (Colo. App. 2013).

34.     Here, Defendants engaged in unfair and deceptive trade practices by misrepresenting the benefits and terms of the Renters Policy.  In particular, while attempting to get the Thorntons to purchase the Renters Policy, AAA, as agent for Safeco represented that the Renters Policy would provide sufficient coverage to the Thorntons to protect the Property while they moved across the country.  Further, AAA, as agent for Safeco represented that if the Thorntons settled with Moving Staffers, that their losses would be paid in full.

35.     Based upon these false representations, the Thorntons were induced into purchasing an insurance policy that was inadequate for their needs as it would not provide coverage for the ordinary hazards of travel across the country.  The Thorntons were further induced into settling with Moving Staffers—for only a small fraction of their losses—which is now being by Safeco to shift liability away from itself.

36.     As a result, the Thorntons have suffered economic losses equal to the value of the Property.  Such representations were made knowingly and in bad faith, which entitles the Thorntons to a damage award of up to three times the amount of economic damages under applicable law. Finally, the Thorntons have had to retain the services of the undersigned counsel to assist with these issues and are entitled to recover their attorneys' fees.

37.     All conditions precedent to Plaintiff's recovery on the Lease Agreement have been performed, have occurred, or have been waived.

**c.  Cause of Action – Common Law Negligence.**

38.     The foregoing paragraphs are incorporated by reference.

39.     Under both Texas and Colorado law, an insurance broker who agrees to obtain a particular form of insurance owes duties to a client to obtain that particular form of insurance or

to timely notify the client of the inability to do so. *See May v. United Servs. Ass'n of Am.*, 844 S.W.2d 666, 669 (Tex.1992); *Sonic Sys. Int'l, Inc. v. Croix*, 278 S.W.3d 377, 389 (Tex.App.—Houston [14th Dist.] 2008, pet. denied); *Mayhew v. Glazier*, 68 Colo. 350 (1920); *DC-10 Entertainment, LLC v. Manor Insurance Agency, Inc.*, 308 P.3d 1223, 1228-29 (Colo. App. 2013).

40.     Here, AAA agreed to obtain insurance policy that would sufficiently cover the Property for their cross-country move.  AAA informed them that the Renters Policy adequately provided them with such coverage.

41.     However, the Renters Policy failed to insure against any hazards that are foreseeable in a cross-country move.

42.     As a result of AAA's failure to provide such coverage or inform them that such coverage cannot be provided, the Thorntons undertook their move with inadequate insurance coverage.  Without adequate coverage, they are unable to recover the losses caused by their damaged personal belongings.

43.     Plaintiffs seek damages for negligence equal to the losses they have suffered due to their personal belongings being inadequately insured.

44.     All conditions precedent to Plaintiff's recovery have been performed, have occurred, or have been waived.

## PRAYER

For these reasons, Plaintiffs request that defendants be cited to appear and answer and that, upon final hearing, the Court enter judgment awarding the Thorntons economic damages equal to the amount of value of the lost property, treble damages, attorneys' fees and costs of suit; and all other relief, in law and in equity, to which Plaintiffs is entitled.

Respectfully submitted,

By:  /s/ Philip W. Danaher
    PHILIP W. DANAHER
    DANAHER LAW FIRM, P.C.
    Mo. Bar #71494
    Tx. Bar #24078395
    833 SW Lemans Lane
    Suite 116
    Lee's Summit, MO. 64082
    816 398-7365
    Fax: 816 622-1293
    philip@danaherlawfirm.com


    MARK D. CRONENWETT
    Texas Bar No. 00787303
    mcronenwett@mwzmlaw.com

    MACKIE WOLF ZIENTZ & MANN, P. C.
    14160 North Dallas Parkway, Suite 900
    Dallas, TX 75254
    Telephone: (214) 635-2650
    Facsimile: (214) 635-2686

**ATTORNEYS FOR PLAINTIFFS**

<u>**CERTIFICATE OF SERVICE**</u>

    I hereby certify that a true and correct copy of the foregoing instrument was served via ECF Notification on January 24, 2023, upon the following:

| | |
|---|---|
| Jason R. Jobe | Aaron L. Mitchell |
| jjobe@thompsoncoe.com | aaronm@tbmmlaw.com |
| Tandis Taghavi | Kieran W. Leary |
| ttaghavi@thompsoncoe.com | kieranl@tbmmlaw.com |
| Thompson, Coe, Cousins & Irons, L.L.P. | Tollefson Bradley Mitchell & Melendi, LLP |
| Plaza of the Americas | 2811 McKinney Ave., Suite 250 |
| 700 N. Pearl Street, Twenty-Fifth Floor | Dallas, Texas 75204 |
| Dallas, Texas 75201 | 214-665-0100 |
| 214-871-8200 | 214-665-0199 (Fax) |
| 214-871-8209 (Fax) | |
| *Attorneys for Defendant AAA Colorado, Inc.* | |


                      */s/ Philip W. Danaher*
                     **PHILIP W. DANAHER**

# Exhibit A

05-5271
AAA  COLORADO  INC
6061 S WILLOW  DR STE 100
GREENWOOD  VLG    CO   80111-5157

PATRICK  THORNTON
JESSICA  THORNTON
16669 E BERRY  LN
CENTENNIAL  CO  80015-4039

OC-464/EP  4/99
G2

**Safeco** Insurance ™

A Liberty Mutual Company

AAA  COLORADO  INC
6061  S WILLOW  DR STE 100
GREENWOOD  VLG    CO    80111-5157

July  7, 2021

Policy  Number: █████████

24-Hour  Claims:  1-800-332-3226
Policy  Service:  (303) 753-8800
Online  Account  Services:  www.safeco.com

**THIS  IS  NOT  A  BILL.**

PATRICK  THORNTON
JESSICA  THORNTON
████████████████

Welcome  to Safeco]

We believe  insurance  shouldn't  be any more complex  than it has to be.   Welcome  to an easier experience  with Safeco.

Enclosed  is your new homeowners  policy.   Read it through carefully.   It will give you a detailed description  of the type and amount of your coverage,  any deductibles  (your out-of-pocket  costs) that apply and the effective  date of your policy.   If, after reading  your policy, you have any questions  or want to find out about discounts  that may apply to your policy, please call (303) 753-8800.

The premium  for your policy is $1,135.00  for the July 12, 2021 to July 12, 2022 policy term. When you receive  your billing  statement,  please review  it carefully  for the amount and date of your next payment.   Please  also verify that your requested  payment  method  is correct.

You can uncomplicate  your bill paying  experience  by choosing  our Automatic  Deduction  Payment Plan, which offers the convenience  of monthly  deductions  from your checking  account  that can be scheduled  any day of the month you like.   Enroll in Automatic  Deduction  online  at www.safeco.com.

For added convenience,  visit www.safeco.com  and make use of our automated  services available  to you including,  but not limited  to:

- Make  a payment  by online  check, or credit  card.
- Review  your billing  history.
- Change  your billing  due date.
- View your policy  documents.
- Order  a copy of your policy  and/or  insurance  ID cards.
- Report  to us a name change,  or change  of address.
- Review  Safeco's  Producer  Compensation  Disclosure.

For all other assistance  please  call your agent  at (303) 753-8800.

PLEASE  SEE  REVERSE
**SAFECO  INSURANCE  COMPANY  OF  AMERICA**
P O BOX  704000,  SALT LAKE  CITY, UT 84170

OC-429/EP  10/13

Thank you for your business.   We look forward to serving you.


Sincerely,

Tyler Asher
President, Safeco Insurance

**Colorado Consumer Notification — Loss History Information Report**

**Colorado requires insurers to provide a notice on all Homeowners insurance polices and renewal notices:**

- **information on how an insured may obtain a free loss history disclosure;**

- **a toll-free number; and**

- **a web address that the insured may access to obtain the loss history report.**

**The loss history we use is based on information provided by C.L.U.E., a consumer credit reporting agency. C.L.U.E. can provide you with a free copy of your loss history report and can answer questions about that report, but, because C.L.U.E. did not make this decision, C.L.U.E. will not be able to answer questions regarding your insurance policy. If you have any questions about your policy, please contact your Safeco agent.**

**C.L.U.E. Toll-free number: 1-866-312-8076**
**Web address: www.choicetrust.com**

CHO-6518/COEP 1/05
G1



## Consumer Privacy Statement

Safeco appreciates the trust you place in us when you purchase insurance from one of our companies. We are committed to protecting your nonpublic personal information ("personal information") and we value you as a customer.

To learn more about how Safeco collects and uses your personal information, please read the following notice.

### Safeco's sources of information about you

We collect personal information about you from different sources, including:

- The information you provide on applications or other forms (such as your name, address and Social Security number);

- Your transactions with us, our affiliates or others (such as your payment history and claims information);

- The information we receive from a consumer reporting agency or insurance support organization (such as your credit history, driving record or claims history); and

- Your independent insurance producer (such as updated information pertaining to your account).

### Safeco's use of your personal information

We only disclose personal information about our customers and former customers as permitted by law. Generally, this includes sharing it with third parties to administer your transactions with us, service your insurance policy or claim, detect and prevent fraud, or with your authorization. These third parties may include independent insurance producers authorized to sell Safeco insurance products, independent contractors (such as automobile repair facilities and property inspectors), independent claims representatives, insurance support organizations, other insurers, auditors, attorneys, courts and government agencies. We may also disclose your personal information to other financial institutions with whom we have joint marketing agreements. When we disclose your information to these individuals or organizations, we require them to use it only for the reasons we gave it to them.

We may also share information about our transactions (such as payment history and products purchased) and experiences with you (such as claims made) within our Safeco family of companies.

Safeco does not sell your personal information to others and we do not provide your information to third parties for their own marketing purposes.

### Independent Safeco Insurance Agents

The independent insurance agents authorized to sell Safeco products are not Safeco employees and not subject to Safeco's Privacy Policy. Because they have a unique business relationship with you, they may have additional personal information about you that Safeco does not have. They may use this information differently than Safeco. Contact your Safeco distributor to learn more about their privacy practices.

### Information about Safeco's web site

If you have internet access and want more information about our web site specific privacy and security practices, click on the Privacy Policy link on www.safeco.com.

**Protecting your personal information from unauthorized access**

We maintain physical, electronic and procedural safeguards to protect your personal information. Our employees are authorized to access customer information only for legitimate business purposes.

**State Privacy Laws**

This privacy statement may be supplemented by privacy laws in your state. We will protect your information in accordance with state law.

**This Privacy Statement applies to the following members of the Safeco family of companies:**

**American Economy Insurance Company**
**American States Insurance Company**
**American States Insurance Company of Texas**
**American States Lloyds Insurance Company**
**American States Preferred Insurance Company**
**First National Insurance Company of America**
**General Insurance Company of America**
**Insurance Company of Illinois**
**Liberty County Mutual Insurance Company**
**Safeco Insurance Company of America**
**Safeco Insurance Company of Illinois**
**Safeco Insurance Company of Indiana**
**Safeco Insurance Company of Oregon**
**Safeco Lloyds Insurance Company**
**Safeco National Insurance Company**
**Safeco Surplus Lines Insurance Company**

© 2011 Safeco Insurance Company of Amer ca, Member of L berty Mutua Group. A R ghts Reserved.

**Safeco Insurance.™**
A Liberty Mutual Company

## SAFECO INSURANCE  COMPANY  OF AMERICA
Home Office:  62 Maple Ave, Keene, NH 03431 (A stock insurance  company.)

### RENTERS  POLICY  DECLARATIONS

**INSURED:**
PATRICK THORNTON
JESSICA THORNTON
█████████████████

**POLICY  NUMBER:** ████████
**POLICY  PERIOD FROM:** JULY 12 2021
**AT:** 12:01 A.M.
**TO:** JULY 12 2022

**AGENT:**
AAA COLORADO INC
6061 S WILLOW DR STE 100
GREENWOOD VLG    CO    80111-5157

TELEPHONE:  (303) 753-8800

**RESIDENCE PREMISES:**
Same

---

| IMPORTANT NOTICES |
| --- |

- Your new policy is effective July 12, 2021.

| COVERAGES | LIMIT | PREMIUM |
| --- | --- | --- |
| SECTION I – PROPERTY COVERAGES | | |
| C – Personal Property | $    200,000 | $    1,131.00 |
| D – Loss of Use | 12 MONTHS | |
| SECTION II – LIABILITY COVERAGES | | |
| E – Personal Liability (each occurrence) | 300,000 | 38.00 |
| F – Medical Payments (each person) | 5,000 | |
| INCLUDED COVERAGES | | |
| Full Value on Personal Property | | Included |
| 2085 – Additional Interest | | Included |

| CREDITS | PERCENTAGE | SAVINGS |
| --- | --- | --- |
| Advance Quote Discount | 3% | $    -34.00 |

| DEDUCTIBLE(S) | PERCENTAGE | AMOUNT |
| --- | --- | --- |
| Section I | N/A | $    1,000 |

| | |
| --- | --- |
| TOTAL ANNUAL PREMIUM | $    1,135.00 |

You may pay your premium in full or in installments. There is no installment fee for
the following billing plans: Full Pay. Installment fees for all other billing plans
are listed below. If more than one policy is billed on the installment bill, only
the highest fee is charged. The fee is:
    $2.00 per installment for recurring automatic deduction (EFT)
    $5.00 per installment for recurring credit card or debit card
    $5.00 per installment for all other payment methods

| POLICY FORMS APPLICABLE TO THIS POLICY: |
| --- |

CHO-6004/EP 1/00, CHO-1227/EP 11/89, CHO-6104/COEP 8/13, CHO-6514/COEP 1/18

\*\*\*\* REPR N ED ROM HE ARCH VE  HE OR G NAL  RANSAC  ON MAY  NCLUDE ADD  ONAL  ORMS \*\*\*\*

# Summary of Coverage
# Renters Policy

**THIS DOCUMENT IS A SUMMARY OF YOUR RENTERS INSURANCE COVERAGE. THE INFORMATION IN THIS DOCUMENT DOES NOT REPLACE ANY POLICY PROVISION. COVERAGE IS SUBJECT TO THE TERMS, CONDITIONS, SPECIAL LIMITS AND EXCLUSIONS OF THE POLICY AND APPLICABLE ENDORSEMENTS. PLEASE READ YOUR POLICY FOR DETAILS! IN THE EVENT OF A CONFLICT BETWEEN THE POLICY AND THIS DISCLOSURE FORM, YOUR POLICY PROVISIONS SHALL PREVAIL.**

| | |
|---|---|
| **General information:** | The coverage amount listed on your attached declaration page is only an estimate of the value of your insured property. It may not be sufficient to replace your property in the event of a total loss. If you have concerns about the estimated amount used to derive your coverage, you should take an opportunity to discuss this with us to ensure you are adequately insured in the event of a total loss.<br><br>It is important that you review and discuss your coverage with your agent or company representative on an annual basis. |
| **Your declarations page lists the specific limits of your policy for each of these coverages:** | **PERSONAL PROPERTY:** Personal items and household goods; valuable items, such as jewelry and art, are subject to limitations. You may have the option of purchasing replacement cost coverage on your personal property or your personal property may be valued at actual cash value. If you own valuable items you should consider purchasing additional coverage through a scheduled endorsement or separate policy.<br><br>• **Replacement Cost** is the amount it takes to replace your damaged or destroyed property, subject to the limits shown in your declaration page and policy. Please refer to your policy for additional information.<br><br>• **Actual Cash Value** is the cost of repairing or replacing damaged or destroyed property with property of same kind and quality less depreciation, subject to the limits shown in your declaration page and policy.<br><br>**LOSS OF USE:** Covers increased living expenses during the time required to repair or replace the damage to the residence you rent following an insured loss, or if you permanently relocate, the time required to move your household to a new location. This coverage may be subject to time and expense limitations. Please review your policy.<br><br>**PERSONAL LIABILITY:** Provides protection if you or a resident insured causes bodily injury or property damage to another, on a per occurrence basis.<br><br>**MEDICAL PAYMENTS TO OTHERS:** If a person, other than you or a resident of your household, is injured on the insured premises, this coverage will pay medical expenses subject to the policy limit. |
| **Items that may affect your premium:** | • Deductible: That part of the covered loss for which you are responsible for paying. Please review your policy declaration page;<br><br>• Multiple policy discounts;<br><br>• Claim history (discount or surcharge);<br><br>• Central sprinkler system;<br><br>• Smoke/fire/burglar alarms. |

**IMPORTANT:** *This document is a summary of coverage available under your renter's policy. The policy is a contract between you and us. Each of us has duties, rights and responsibilities under this contract. Please review your policy carefully. If you have any questions or concerns you may also contact the Colorado Division of Insurance.*

| | |
|---|---|
| **Additional coverages you might want to consider, for an additional premium:** | • **Scheduled Personal Property:** Your policy may provide limited coverage for certain types of property, such as jewelry, fine arts, furs, electronic or musical equipment, etc. Scheduling, or purchasing a personal articles policy, will provide additional coverage or limits for these items.<br><br>• **Personal Umbrella Policy:** Provides additional liability coverage to supplement the protection provided by renters and automobile insurance policies. |
| **General Exclusions:** | **Your policy does not provide coverage for all possible losses. The following are examples of some of the reasons a loss might not be covered. Please refer to your policy for specific exclusions:**<br><br>**Property Exclusions:**<br><br>• Loss or damage that you or a resident of your household intentionally causes;<br><br>• Flooding*, including surface water;<br><br>• Pollution and contamination;<br><br>• Birds, vermin, or house pets;<br><br>• Mold or fungi;<br><br>• Wear and tear.<br><br>*Flood insurance may be purchased through the National Flood Insurance Program (www.floodsmart.gov)<br><br>**Liability Exclusions:**<br><br>• Any loss that an insured intends or should expect to happen;<br><br>• Bodily injury to an insured person or property damage to an insured person's property;<br><br>• Damage, which results from the ownership or use of an automobile and other types of motorized land vehicles, aircraft, or certain watercraft. |
| **Reasons for cancellation, non-renewal *or* increase in premium:** | **Cancellation and Nonrenewal:**<br><br>You may cancel your policy at any time by writing to us or your agent and indicating the date the cancellation is to take effect.<br><br>We may choose to cancel or non-renew your policy. If your policy is cancelled or non-renewed, we will send you advance notice. Some examples of reasons for cancellation and non-renewal include, but are not limited to:<br><br>1. Failure to pay your premium when it is due;<br><br>2. Knowingly making a false statement or a material misrepresentation on your application for your policy;<br><br>3. Knowingly making a false statement or material misrepresentation regarding a claim;<br><br>4. Frequency or type of claims;<br><br>5. A substantial change in the use or occupancy of the premises.<br><br>**Increase in Premium:**<br><br>Conditions that may increase your premium include, but are not limited to:<br><br>1. A loss resulting in a paid claim;<br><br>2. A general rate increase. This results from the loss experience of a large group of policyholders rather than from a loss suffered by an individual policyholder. A general rate increase applies to many persons in the group, not just those who had losses. |

| | **3.** | Adjustment for inflation. We include inflation coverage in your policy. This coverage may automatically increase the amount of your insurance coverage as inflation pushes up the cost of replacing your property. The increases may be based on a consumer price index and may be reflected in the premium on each renewal date. |
| | **4.** | Change in credit-based insurance score. |

**IMPORTANT:** *In Colorado, there is potential for large and even total losses due to fires, tornadoes, other natural disasters, or other causes of loss. It is extremely important to conduct an annual review of your property coverage to ensure you are adequately insured. If you have questions or concerns regarding your insurance coverage, be sure to discuss them with your insurance agent or company representative. Please maintain a copy of this document and your entire policy in a safe and secure location away from your property.*



# RENTERS POLICY

### Table of Contents

|  |  | Beginning On Page |
|---|---|---|
| | **INSURING AGREEMENT** | **1** |
| **SECTION I PROPERTY COVERAGES** | **COVERAGE C — PERSONAL PROPERTY**<br>Personal Property We Cover<br>Personal Property We Do Not Cover<br>Personal Property Losses We Cover<br>Personal Property Losses We Do Not Cover<br>**COVERAGE D — LOSS OF USE**<br>**ADDITIONAL PROPERTY COVERAGES**<br>**PROPERTY CONDITIONS** | **1** |
| **SECTION II LIABILITY COVERAGES** | **COVERAGES E & F — PERSONAL LIABILITY AND MEDICAL PAYMENTS**<br>Liability Losses We Cover<br>Liability Losses We Do Not Cover<br>**ADDITIONAL LIABILITY COVERAGES**<br>**LIABILITY CONDITIONS** | **8** |
| **SECTIONS I AND II** | **PROPERTY AND LIABILITY CONDITIONS** | **14** |
| | **POLICY DEFINITIONS** | **15** |

CHO-6004/EP 1/00
G4

\*\*\*\* REPR N  ED  ROM  HE ARCH VE    HE OR G NAL  RANSAC  ON MAY  NCLUDE ADD   ONAL  ORMS \*\*\*\*

## INSURING AGREEMENT

In reliance on the information you have given us, we will pay claims and provide coverage as described in this policy if you pay the premiums when due and comply with all the applicable provisions outlined in this policy.

This policy applies only to losses occurring during the policy period.

## SECTION I — PROPERTY COVERAGES

**PERSONAL PROPERTY WE COVER**

**COVERAGE C — PERSONAL PROPERTY**

1. Personal property owned or used by any *insured* is covered while it is anywhere in the world. When personal property is usually located at an *insured's* residence, other than the *residence premises,* coverage is limited to 10% of the Coverage **C** limit. Personal property in a newly acquired principal residence is not subject to this limitation for the 30 days immediately after you begin to move the property there.

   During the time the *residence premises* is under construction by or for the *insured,* our limit of liability for personal property other than on the *residence premises* shall be equal to the amount specified for Coverage **C.** Our total limit shall not exceed the policy limit for Coverage **C** in any one loss.

2. At your request we cover:

   a. personal property owned by others while the property is on that part of the *residence premises* occupied exclusively by any *insured;*

   b. personal property owned by a guest or a *residence employee,* while the property is at any residence occupied by any *insured.*

3. The following groups of personal property are covered only up to the special limit shown. The special limit is the total amount available for that group for any one loss and does not increase the Coverage **C** limit. The loss of, or to, more than one item in a group arising from the same cause or event is considered one loss.

   a. $250 on money, pre-paid cards or passes, monetary value carried on electronic chip or magnetic cards, bank notes, bullion, gold other than goldware, silver other than silverware and platinum.

   b. $3,000 on rare coins and currency, medals, stamps, trading cards and comic books, including any of these that are part of a collection.

   c. $1,500 on securities, debit cards, checks, cashier's checks, traveler's checks, money orders and other negotiable instruments, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, passports, tickets, personal documents, and records or data.

      This dollar limit applies to these categories regardless of the medium (such as paper or computer software) on which the material exists.

      This limit includes the cost to research, replace or restore the material from the lost or damaged medium.

   d. $1,500 on watercraft, including their trailers, furnishings, equipment and outboard motors.

   e. $1,500 on trailers not used with watercraft.

   f. $1,500 on any one article, but not more than $3,000 in the aggregate for loss by theft of jewelry, watches, furs, precious and semiprecious stones.

   g. $3,000 for loss by theft of silverware, silver-plated ware, goldware, gold-plated ware and pewterware.

      Silverware, goldware and pewterware include:

      (1) plateware, flatware, hollowware, tea sets, trays, trophies and the like;

      (2) other utilitarian items made of or including silver or gold; and

**(3)** all items of pewterware.

**h.** $5,000 on **business** property, not excluded elsewhere, while located on the **residence premises.**

**i.** $1,000 on **business** property, not excluded elsewhere, while located away from the **residence premises.**

**j.** $200 on tapes, records, discs or other media in a motor vehicle or other motorized land conveyance on or away from the **residence premises.**

**k.** $5,000 on any one article, but not more than $10,000 in the aggregate, for loss by theft of any rug, carpet (except wall-to-wall carpet), tapestry, wall-hanging or other similar article.

**l.** $2,000 on grave markers.

## PERSONAL PROPERTY WE DO NOT COVER

**1.** Articles separately described and specifically insured, regardless of insured limit, in this or any other insurance.

**2.** Animals, birds or fish.

**3.** Motorized land vehicles including their equipment and accessories while in or upon the vehicle.

However, we do cover:

**a.** motorized land vehicles used solely to service the **residence premises** and not subject to motor vehicle registration or licensed for road use;

**b.** golf carts;

**c.** vehicles designed for the handicapped and not licensed for road use;

**d.** devices or instruments for the transmitting, recording, receiving or reproduction of sound or pictures, which are not permanently installed in a motorized land vehicle; or

**e.** disassembled parts of a motorized land vehicle while located on the **residence premises.**

**4.** Any device or instrument, including any accessories or antennas, for the transmitting, recording, receiving or reproduction of sound or pictures which are permanently installed in a motor vehicle.

**5.** Aircraft, including disassembled parts of aircraft. This exclusion does not apply to model aircraft. Any aircraft designed for carrying persons or cargo is not a model aircraft.

**6.** Property of roomers, boarders and other tenants not related to any **insured.**

**7.** Property in a location regularly rented or held for rental to others by any **insured;** but this exclusion does not apply to property of an **insured** in a sleeping room rented to others by an **insured** on the **residence premises.**

**8.** Property, away from the **residence premises,** rented or held for rental to others.

**9.** **Business** property or merchandise:

**a.** in storage;

**b.** held as a sample; or

**c.** held for sale or delivery after sale.

**10.** **Business** documents, records or data regardless of the medium on which they exist.

However, we do cover the cost of blank recording or storage media, and of pre-recorded computer programs available on the retail market.

## PERSONAL PROPERTY LOSSES WE COVER

We cover accidental direct physical loss to property described in Coverage **C —** Personal Property caused by a peril listed below except as limited or excluded.

**1. Fire or lightning.**

**2. Windstorm or hail.**

This peril does not include loss to the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

This peril includes loss to watercraft and their trailers, furnishings, equipment, and outboard motors, only while inside a building with:

**a.** continuous walls on all sides extending from ground level to the roof;

**b.** doors and windows in the walls at various locations; and

**c.** a continuous roof sheltering all areas within the wall perimeter.

**3. Explosion.**

**4. Riot or civil commotion.**

**5. Aircraft,** including self-propelled missiles and spacecraft.

**6. Vehicles,** meaning impact by a vehicle.

**7. Smoke,** meaning sudden and accidental damage from smoke.

This peril does not include loss caused by smoke from agricultural smudging or industrial operations, such as slash burns.

**8. Vandalism or malicious mischief.**

**9. Theft,** including attempted theft and loss of property from a known location when it is likely that the property has been stolen.

This peril does not include loss caused by theft:

**a.** committed by any **insured** or by any other person regularly residing on the **insured location;**

**b.** in, to or from a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is completed and occupied; or

**c.** from that part of a **residence premises** rented by any **insured** to other than an **insured.**

This peril does not include loss caused by theft that occurs away from the **residence premises** of property while at any other residence owned, rented to, or occupied by any **insured,** except while an **insured** is temporarily residing there.

Property of a student who is an **insured** is covered while at a residence away from home.

**10. Falling objects.**

This peril does not include loss to property contained in a building unless the roof or an outside wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.

**11. Weight of ice, snow or sleet** which causes damage to property contained in a building.

**12. Collapse** of a building or any part of a building.

This peril does not include settling, cracking, shrinking, bulging or expansion.

**13. Accidental discharge or overflow of water or steam** from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system, or from within a household appliance.

This peril does not include loss:

**a.** to the appliance or system from which the water or steam escaped;

**b.** caused by or resulting from freezing except as provided in the peril of freezing below; or

**c.** on the **residence premises** caused by accidental discharge or overflow which occurs off the **residence premises.**

**14. Sudden and accidental tearing apart, cracking, burning or bulging** of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

We do not cover loss caused by or resulting from freezing under this peril.

**15. Freezing** of a plumbing, heating, air conditioning or automatic fire protective sprinkler system, or of a household appliance.

This peril does not include loss on the ***residence premises*** while the dwelling is unoccupied, unless you have used reasonable care to:

**a.**  maintain heat in the building; or

**b.**  shut off the water supply and drain the system and appliances of water.

**16.  Sudden and accidental damage from artificially generated electrical current.**

**17.  Breakage of glass,** meaning damage to personal property caused by breakage of glass which is a part of a building on the ***residence premises.*** There is no coverage if breakage of glass is caused by ***earthquake.*** There is no coverage for loss or damage to the glass.

---

## PERSONAL PROPERTY LOSSES WE DO NOT COVER

We do not cover loss caused directly or indirectly by any of the following excluded perils. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss:

**1.  Earth Movement,** meaning the sinking, rising, shifting, expanding or contracting of earth, all whether combined with water or not. Earth movement includes but is not limited to ***earthquake,*** landslide, mudflow, mudslide, sinkhole, subsidence, erosion or movement resulting from improper compaction, site selection or any other external forces. Earth movement also includes volcanic explosion or lava flow.

We do cover direct loss by fire, explosion or theft.

**2.  Water Damage,** meaning:

**a.**  flood, surface water, waves, tidal water, tsunami, overflow of a body of water, or spray from any of these, whether or not driven by wind;

**b.**  water below the surface of the ground, including water which exerts pressure on, or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool, hot tub or spa, including their filtration and circulation systems, or other structure;

**c.**  water which backs up through sewers or drains originating outside of the ***residence premises'*** plumbing system; or

**d.**  water which backs up, overflows or discharges, for any reason, from within a sump pump, sump pump well or any other system designed to remove subsurface water which is drained from the foundation area.

Direct loss by fire, explosion or theft resulting from water damage is covered.

**3.  Power Interruption,** meaning the failure of power or other utility service if the failure takes place off the ***residence premises.*** If any Personal Property Losses We Cover ensues on the ***residence premises,*** we will pay only for the ensuing loss.

**4.  Neglect,** meaning your failure to use all reasonable means to save and preserve property at and after the time of a loss, or when property is endangered.

**5.**  Loss caused directly or indirectly by War, including the following and any consequence of any of the following:

**a.**  undeclared war, civil war, insurrection, rebellion, or revolution;

**b.**  warlike act by a military force or military personnel; or

**c.**  destruction or seizure or use for a military purpose.

Discharge of a nuclear weapon shall be deemed a warlike act even if accidental.

**6.  Nuclear Hazard,** meaning nuclear reaction, nuclear radiation, or radioactive contamination, all whether controlled or uncontrolled, and whether or not one of the forces initiating or contributing to these nuclear hazards is covered within the losses we cover in Section I except direct loss by fire resulting from the nuclear hazard is covered.

**7.  Intentional Loss,** meaning any loss arising out of any act committed:

**a.**  by or at the direction of any ***insured;***

**b.**  with the intent to cause a loss.

**8.  Acts or Decisions,** including the failure to act or decide, of any person, group, organization or governmental body. However, any ensuing loss not excluded is covered.

**9.**  Weather that contributes in any way with a cause or event excluded in this section to produce a loss. However, any ensuing loss not excluded is covered.

**10.  Planning, Construction or Maintenance,** meaning faulty, inadequate or defective:

    **a.**  planning, zoning, development, surveying, siting;

    **b.**  design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

    **c.**  materials used in repair, construction, renovation or remodeling; or

    **d.**  maintenance;

of property whether on or off the ***insured location*** by any person or organization. However, any ensuing loss not excluded is covered.

## COVERAGE D — LOSS OF USE

**1.**  If a loss covered under this Section makes that part of the ***residence premises*** where you reside uninhabitable we cover **Additional Living Expense,** meaning any necessary increase in living expenses you incur so that your household can maintain its normal standard of living.

Payment shall be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere, but not to exceed 12 months.

**2.**  If a loss covered under this Section makes that part of the ***residence premises*** you rent to others or hold for rental uninhabitable, we cover:

    **Fair Rental Value,** meaning the **fair rental value** of that part of the ***residence premises*** you rent to others or hold for rental, less any expenses that do not continue while the premises is uninhabitable.

Payment shall be for the shortest time required to repair or replace the damage, but not to exceed 12 months.

**3.**  If a civil authority prohibits you from use of the ***residence premises*** as a result of direct damage to neighboring premises by a loss we cover in this policy we cover the **Additional Living Expense** as provided under **1.** or **Fair Rental Value** as provided under **2.** above for no more than two weeks during which use is prohibited.

The periods of time under **1., 2.** and **3.** above are not limited by expiration of this policy.

We do not cover loss or expense due to cancellation of a lease or agreement.

No deductible applies to this coverage.

## ADDITIONAL PROPERTY COVERAGES

The following **Additional Property Coverages** are subject to all the terms, provisions, exclusions, and conditions of this policy.

**1.  Debris Removal.** We will pay the reasonable expense you incur in the removal of debris of covered property provided coverage is afforded for a loss we cover. Debris removal expense is included in the limit of liability applying to the damaged property. When the amount payable for the actual damage to the property plus the expense for debris removal exceeds the limit of liability for the damaged property, an additional 5% of that limit of liability will be available to cover debris removal expense.

We will also pay the reasonable expenses you incur, up to $500, for the removal of trees from the ***residence premises,*** provided the trees damage covered property. The $500 limit is the most we will pay in any one loss regardless of the number of fallen trees.

**2.  Trees, Shrubs and Other Plants.** We cover, as an additional amount of insurance, trees, shrubs, plants or lawns, on the ***residence premises,*** for loss caused by the following perils: Fire or lightning, Explosion, Riot or civil commotion, Aircraft, Vehicles not owned or operated by a resident of the ***residence premises,*** Vandalism or Malicious mischief and Theft.

We will pay up to 10% of the limit of liability that applies to Coverage **C** for all trees, shrubs, plants and lawns. No more than $500 of this limit will be available for any one tree, shrub or plant.

3. **Reasonable Repairs.** We will pay up to $5,000 for the reasonable cost you incur for necessary repairs made solely to protect covered property from further damage, following a covered loss. This coverage does not increase the limit of liability applying to the property being repaired.

4. **Fire Department Service Charge.** We will pay, up to $500, as an additional amount of insurance, for your liability assumed by contract or agreement for fire department charges incurred when the fire department is called to save or protect covered property from a loss we cover.

   We do not cover fire department service charges if the property is located within the limits of the city, municipality or protection district furnishing the fire department response.

5. **Property Removed.** We insure covered property against direct loss from any cause while being removed from a premises endangered by a loss we cover. We will cover this property for a maximum of 30 days while removed. This coverage does not change the limit of liability that applies to the property being removed.

6. **Building Additions and Alterations.** We cover, as an additional amount of insurance under Coverage C, the building additions, alterations, fixtures, improvements or installations, made or acquired at your expense, to that part of the *residence premises* used exclusively by you. The limit of liability for this coverage shall not exceed 10% of the limit of liability that applies to Coverage **C.**

7. **Arson Reward.** We will pay up to $1,000 for information which leads to an arson conviction in connection with a fire loss to property covered by this policy. This coverage may increase the limit otherwise applicable. However, we will not pay more than $5,000 per event regardless of the number of persons providing information.

8. **Locks.** We will pay the reasonable expenses you incur to rekey locks on exterior doors of the dwelling located on the *residence premises,* when the keys to those locks are part of a covered theft loss.

   No deductible applies to this coverage.

---

## SECTION I —   PROPERTY CONDITIONS

1. **Deductible.** In case of loss under Section **I** —   Property Coverages of this policy, we cover only that part of the loss over the applicable deductible stated in the Declarations.

   The deductible does not apply to **Coverage D —   Loss Of Use** or Fire Department Service Charge.

2. **Your Duties to Select and Maintain Policy Limits.** It is your responsibility to select and maintain adequate amounts of insurance on your personal property and building additions and alterations. To simplify your responsibility of keeping your personal property insured to value during fluctuating economic conditions, we will suggest annual changes, either up or down, of your policy limits. This suggestion will be made on the renewal date of your policy, applied pro rata during the policy period, and will be based upon average factors for your area supplied to us by recognized appraisal agencies.

   You will be notified in advance of the new amount of coverage. Payment of your renewal is all that is necessary to indicate your acceptance of the new amount.

3. **An Insured's Duties After Loss.** In case of a loss to which this insurance may apply, you must perform the following duties:

   a.   cooperate with us in the investigation, settlement or defense of any claim or suit;

   b.   give immediate notice to us or our agent;

   c.   notify the police in case of loss by theft;

   d.   protect the property from further damage, make reasonable and necessary repairs required to protect the property and keep an accurate record of repair expenses;

   e.   prepare an inventory of the loss to the building and damaged personal property showing in detail the quantity, description, *actual cash value* and age. Attach all bills, receipts and related documents that justify the figures in the inventory;

   f.   as often as we reasonably require:

      **(1)**   exhibit the damaged and undamaged property;

      **(2)**   provide us with records and documents we request and permit us to make copies; and

**(3)** submit to examinations under oath and subscribe the same. We may examine you separately and apart from your spouse or any other *insured.* You shall not interfere with us examining any other *insured.*

**g.** submit to us, within 60 days after we request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

**(1)** the time and cause of loss;

**(2)** interest of the *insured* and all others in the property involved and all encumbrances on the property;

**(3)** other insurance which may cover the loss;

**(4)** changes in title or occupancy of the property during the term of the policy;

**(5)** specifications of any damaged building and detailed repair estimates;

**(6)** an inventory of damaged personal property described in **3.e.;**

**(7)** receipts for **Additional Living Expenses** incurred or records supporting the **Fair Rental Value** loss.

**4. Insurable Interest and Limit of Liability.** Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:

**a.** to the *insured* for more than the amount of the *insured's* interest at the time of loss; or

**b.** for more than the applicable limit of liability;

whichever is less.

**5. Loss Settlement.** Covered property losses are settled at *actual cash value* at the time of loss but not exceeding the smallest of the following amounts:

**a.** the applicable limit of liability;

**b.** the direct financial loss you incur; or

**c.** our pro rata share of any loss when divided with any other valid and collectible insurance applying to the covered property at the time of the loss.

**6. Loss to a Pair or Set.** In case of loss to a pair or set we may elect to:

**a.** repair or replace any part to restore the pair or set to its value before the loss; or

**b.** pay the difference between *actual cash value* of the pair or set before and after the loss.

**7. Appraisal.** If you and we do not agree on the amount of *actual cash value* or amount of loss, then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within 20 days of such demand. The appraisers shall first select a competent and disinterested umpire; and failing for 15 days to agree upon such umpire, then, on request of you or the company, such umpire shall be selected by a judge of a court of record in the state in which the property covered is located. The appraisers shall then resolve the issues surrounding the loss, appraise the loss, stating separately the *actual cash value* of each item, and, failing to agree, shall submit their differences, only, to the umpire. An award in writing, so itemized, of any two of these three, when filed with the company shall determine the amount of loss.

Each party will:

**a.** pay its own appraiser; and

**b.** bear the other expenses of the appraisal and umpire equally.

**8. Suit Against Us.** No action shall be brought against us unless there has been compliance with the policy provisions and the action is started within one year after the loss or damage.

**9. Our Option.** If we give you written notice within 30 days after we receive your signed, sworn proof of loss, we may repair or replace any part of the property damaged with equivalent property.

**10. Loss Payment.** We will adjust all losses with you. We will pay you unless some other person is named in the policy to receive payment. Loss will be payable 30 days after:

**a.** we reach agreement with you;

**b.** there is an entry of a final judgment; or

   **c.**   there is a filing of an appraisal award with us.

**11.** **Abandonment of Property.** We need not accept any property abandoned by any **insured.**

**12.** **No Benefit to Bailee.** We will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this policy.

**13.** **Other Insurance.** If a loss covered by this policy is also covered by other insurance, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss.

**14.** **Recovered Property.** If you or we recover any property for which we have made payment under this policy, you or we will notify the other of the recovery. At your option, the property will be returned to or retained by you or it will become our property. If the recovered property is returned to or retained by you, the loss payment will be adjusted based on the amount you received for the recovered property.

**15.** **Salvage Value.** Any value that may be realized from **salvage** will not diminish the amount owed by you under the deductible clause. We need not accept, but have all rights to **salvage.**

---

## SECTION II —   LIABILITY COVERAGES

---

### LIABILITY LOSSES WE COVER

### COVERAGE E —   PERSONAL LIABILITY

If a claim is made or a suit is brought against any **insured** for damages because of **bodily injury** or **property damage** caused by an **occurrence** to which this coverage applies, we will:

**1.** pay up to our limit of liability for the damages for which the **insured** is legally liable; and

**2.** provide a defense at our expense by counsel of our choice even if the allegations are groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for damages resulting from the **occurrence** equals our limit of liability.

### COVERAGE F —   MEDICAL PAYMENTS TO OTHERS

We will pay the necessary medical expenses incurred or medically ascertained within three years from the date of an accident causing **bodily injury.** Medical expenses means reasonable charges for medical, surgical, X-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage does not apply to you or regular residents of your household other than **residence employees.** As to others, this coverage applies only:

**1.** to a person on the **insured location** with the permission of any **insured;** or

**2.** to a person off the **insured location,** if the **bodily injury:**

   **a.**   arises out of a condition on the **insured location** or the ways immediately adjoining;

   **b.**   is caused by the activities of any **insured;**

   **c.**   is caused by a **residence employee** in the course of the **residence employee's** employment by any **insured;** or

   **d.**   is caused by an animal owned by or in the care of any **insured.**

---

### LIABILITY LOSSES WE DO NOT COVER

**1.** **Coverage E —   Personal Liability and Coverage F —   Medical Payments to Others** do not apply to **bodily injury** or **property damage:**

   **a.**   which is expected or intended by any **insured** or which is the foreseeable result of an act or omission intended by any **insured;**

   **b.**   arising out of **business** pursuits of any **insured** or the rental or holding for rental of any part of any premises by any **insured.**

This exclusion does not apply to:

**(1)** Activities which are ordinarily incident to non-***business*** pursuits except as excluded in **h.** below;

**(2)** Coverage **E** for the occasional or part-time ***business*** pursuits of any ***insured*** who is under 23 years of age;

**(3)** the rental or holding for rental of a residence of yours:

    **(a)** on an occasional basis for the exclusive use as a residence;

    **(b)** in part, unless intended for use as a residence by more than two roomers or boarders; or

    **(c)** in part, as an office, school, studio or private garage;

**c.** arising out of the rendering or failing to render professional services;

**d.** arising out of any premises owned or rented to any ***insured*** which is not an ***insured location;***

**e.** arising out of the ownership, maintenance, use, loading or unloading of:

**(1)** aircraft.

    This item **e.(1)** does not apply to model aircraft. Any aircraft designed for carrying persons or cargo is not a model aircraft.

**(2)** motorized land vehicles, including any trailers, owned or operated by or rented or loaned to any ***insured.***

    You have coverage for the following:

    **(a)** a trailer not towed by or carried on a motorized land vehicle;

    **(b)** a motorized land vehicle designed for recreational use off public roads, not subject to motor vehicle registration, licensing or permits and:

        **i.** not owned by any ***insured;*** or

        **ii.** owned by any ***insured,*** while on an ***insured location;***

    **(c)** a motorized golf cart;

    **(d)** a motorized land vehicle used solely for assisting the handicapped or solely for the maintenance of an ***insured location,*** which is:

        **i.** not designed for travel on public roads; and

        **ii.** not subject to motor vehicle registration, licensing or permits; or

    **(e)** a motorized land vehicle in dead storage on an ***insured location.***

**(3)** watercraft:

    **(a)** owned by or rented to any ***insured*** if it has inboard or inboard-outdrive motor power of more than 50 horsepower;

    **(b)** owned by or rented to any ***insured*** if it is a sailing vessel 26 feet or more in overall length, with or without auxiliary power;

    **(c)** powered by one or more outboard motors with 50 or more total horsepower if the outboard motors are owned by any ***insured.*** However, outboard motors of 50 or more total horsepower are covered for the policy period if:

        **i.** you acquired them prior to the policy inception, and:

            **(i)** declared them at policy inception; or

            **(ii)** you ask us in writing to insure them within 45 days after you become the owner;

        **ii.** you acquire them during the policy period, provided you ask us to insure them:

            **(i)** during the policy period in which you become the owner; or

            **(ii)** within 45 days after you become the owner;

        whichever is greater, and pay any resulting additional premium from the date acquired.

    **(d)** designed as an air boat, air cushion, or similar type of craft; or

    **(e)** owned by any **insured** which is a **personal watercraft.**

Exclusion **e.(3)** does not apply while the watercraft is stored.

Exclusions **d.** and **e.** do not apply to **bodily injury** to a **residence employee** arising out of and in the course of the **residence employee's** employment by any **insured;**

**f.** arising out of:

    **(1)** the entrustment by any **insured** to any person;

    **(2)** the supervision by any **insured** of any person;

    **(3)** any act, decision or omission by any **insured;**

    **(4)** any liability statutorily imposed on any **insured;** or

    **(5)** any liability assumed through an unwritten or written agreement by any **insured;**

with regard to any aircraft, motorized land vehicle or watercraft which is not covered under Section **II** of this policy.

**g.** caused directly or indirectly by war, including the following and any consequences of the following:

    **(1)** undeclared war, civil war, insurrection, rebellion, or revolution;

    **(2)** warlike act by a military force or military personnel; or

    **(3)** destruction or seizure or use for a military purpose.

Discharge of a nuclear weapon shall be deemed a warlike act even if accidental.

**h.** which results from the legal liability of any **insured** because of home care services provided to any person on a regular basis by or at the direction of:

    **(1)** any **insured;**

    **(2)** any employee of any **insured;**

    **(3)** any other person actually or apparently acting on behalf of any **insured.**

Regular basis means more than 20 hours per week. This exclusion does not apply to:

    **(1)** home care services provided to the relatives of any **insured;**

    **(2)** occasional or part-time home care services provided by any **insured** under 23 years of age.

**i.** arising out of physical or mental abuse, sexual molestation or sexual harassment;

**j.** arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a controlled substance(s). Controlled substances include but are not limited to cocaine, LSD, marijuana, PCP and all narcotic drugs.

However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the orders of a licensed physician.

**k.** arising out of any **insured's** participation in, or preparation or practice for any prearranged or organized race, speed or demolition contest, or similar competition involving a motorized land vehicle or motorized watercraft regardless of whether such contest is spontaneous, prearranged or organized. This exclusion does not apply to a sailing vessel less than 25 feet in overall length with or without auxiliary power.

**2.** **Coverage E — Personal Liability** does not apply to:

  **a.** Liability:

    **(1)** under any contract or agreement. However, this item **2.a.(1)** does not apply to written contracts:

      **(a)** that directly relate to the ownership, maintenance or use of an **insured location;** or

      **(b)** where the liability of others is assumed by the **insured** prior to an **occurrence;**

    unless excluded in **2.a.(1)** above or elsewhere in this policy;

    **(2)** for *punitive damages* awarded against any *insured;*

    **(3)** arising out of any illegal act committed by or at the direction of any *insured.*

**b.** *property damage* to property owned by any *insured;*

**c.** *property damage* to property rented to, occupied or used by or in the care of any *insured.* This exclusion does not apply to *property damage* caused by fire, smoke, explosion or water;

**d.** *bodily injury* to any person eligible to receive any benefits required to be provided or voluntarily provided by any *insured* under:

    **(1)** any workers compensation;

    **(2)** nonoccupational disability; or

    **(3)** occupational disease law;

**e.** *bodily injury* or *property damage* for which any *insured* under this policy is also an *insured* under a nuclear energy liability policy or would be an *insured* but for its termination upon exhaustion of its limit of liability. A nuclear energy liability policy is a policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada, or any of their successors;

**f.** *bodily injury* to any *insured;*

**g.** *bodily injury* or *property damage* arising, in whole or part, out of the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, escape, emission, transmission, absorption, ingestion or inhalation of *pollutants* at any time. This includes any loss, cost or expense arising out of any:

    **(1)** request, demand or order that any *insured* or others test for, monitor, abate, clean up, remove, contain, treat, detoxify, neutralize, or in any way respond to, or assess, the effects of *pollutants;*

    **(2)** claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, or in any way responding to, or assessing, the effects of *pollutants;*

**3.** **Coverage F —  Medical Payments to Others** does not apply to *bodily injury:*

**a.** to a *residence employee* if the *bodily injury* occurs off the *insured location* and does not arise out of or in the course of the *residence employee*'s employment by an *insured;*

**b.** to any person, eligible to receive any benefits required to be provided or voluntarily provided under any workers compensation; nonoccupational disability, or occupational disease law;

**c.** from any nuclear reaction, radiation or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these;

**d.** to any person, other than a *residence employee* of any *insured,* regularly residing on any part of the *insured location.*

**LIABILITY LOSSES WE DO NOT COVER** does not apply to personal injury as defined under *Bodily Injury* **2.b.(1)** and **2.b.(2).**

---

**ADDITIONAL LIABILITY COVERAGES**

We cover the following in addition to the limits of liability:

**1.** **Claim Expenses.** We pay:

**a.** expenses we incur and costs taxed against any *insured* in any suit we defend;

**b.** premiums on bonds required in a suit we defend, but not for bond amounts greater than the limit of liability for **Coverage E —  Personal Liability.** We are not obligated to apply for or furnish any bond;

**c.** reasonable expenses incurred by any *insured* at our request, including actual loss of earnings (but not loss of other income) up to $200 per day, for assisting us in the investigation or defense of any claim or suit; and

    **d.**  interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies.

**2.**   **First Aid Expenses.** We will pay expenses for first aid to others incurred by any *insured* for *bodily injury* covered under this policy. We will not pay for first aid to you or any other *insured.*

**3.**   **Damage to Property of Others.** We will pay on a *replacement cost* basis up to $500 per *occurrence* for *property damage* to property of others caused by any *insured.*

We will not pay for *property damage:*

    **a.**  if insurance is otherwise provided in this policy;

    **b.**  caused intentionally by any *insured* who is 13 years of age or older;

    **c.**  to property owned by or rented to any *insured,* a tenant of any *insured,* or a resident in your household; or

    **d.**  arising out of:

        **(1)**  *business* pursuits;

        **(2)**  any act or omission in connection with a premises owned, rented or controlled by any *insured,* other than the *insured location;* or

        **(3)**  the ownership, maintenance, or use of aircraft, watercraft or motorized land vehicles.

        This item **3.d.(3)** does not apply to a motorized land vehicle designed for recreational use off public roads, not subject to motor vehicle registration, licensing or permits and not owned by any *insured.*

**4.**   **Credit Card, Fund Transfer Card, Forgery and Counterfeit Money.**

We will pay up to $1,000 for:

    **a.**  the legal obligation of any *insured* to pay because of theft or unauthorized use of credit cards issued to or registered in any *insured's* name;

    **b.**  loss resulting from theft or unauthorized use of a fund transfer card used for deposit, withdrawal or transfer of funds, issued to or registered in any *insured's* name.

We do not cover use by a resident of your household, a person who has been entrusted with the credit card or fund transfer card or any person if any *insured* has not complied with all terms and conditions under which the credit card or fund transfer card is issued.

    **c.**  loss to any *insured* caused by forgery or alteration of any check or negotiable instrument; and

    **d.**  loss to any *insured* through acceptance in good faith of counterfeit United States or Canadian paper currency.

All loss resulting from a series of acts committed by any one person or in which any one person is concerned or implicated is considered to be one loss.

We do not cover loss arising out of *business* pursuits or dishonesty of any *insured.*

Defense:

    **a.**  We may make any investigation and settle any claim or suit that we decide is appropriate.

    **b.**  If a suit is brought against any *insured* for liability under the Credit Card or Fund Transfer Card Coverage, we will provide a defense at our expense by counsel of our choice.

    **c.**  We have the option to defend at our expense any *insured* or any *insured's* bank against any suit for the enforcement of payment under the forgery coverage.

**5.**   **Statutorily Imposed Vicarious Parental Liability.**

We will pay the lesser of:

    **a.**  the statutorily imposed limit; or

    **b.**  $3,000;

for the legal obligation you are required to pay as a result of acts of a minor child who resides with you.

This coverage is excess over any other valid and collectible insurance.

## SECTION II —   LIABILITY CONDITIONS

1.  **Limit of Liability.** Our total liability under Coverage **E** for all damages resulting from any one *occurrence* will not exceed the limit of liability for Coverage **E** stated in the Declarations. This limit is the same regardless of the number of *insureds,* claims made or persons injured.

    Our total liability under Coverage **F** for all medical expense payable for *bodily injury* to one person as the result of one accident shall not exceed the limit of liability for Coverage **F** stated in the Declarations.

2.  **Severability of Insurance.** This insurance applies separately to each *insured.* This condition shall not increase our limit of liability for any one *occurrence.*

3.  **Your Duties After Loss.** In case of an accident or *occurrence,* the *insured* shall perform the following duties that apply:

    a.  give written notice to us or our agent as soon as practicable, which sets forth:

        (1)  the identity of the policy and *insured;*

        (2)  reasonably available information on the time, place and circumstances of the accident or *occurrence;*

        (3)  names and addresses of any claimants and witnesses; and

        (4)  in case of loss under the Credit Card or Fund Transfer Card Coverage also notify the Credit Card or Fund Transfer Card Company;

    b.  promptly forward to us every notice, demand, summons or other process relating to the accident or *occurrence;*

    c.  at our request, help us:

        (1)  to make a settlement;

        (2)  to enforce any right of contribution or indemnity against any person or organization who may be liable to any *insured;*

        (3)  with the conduct of suits and attend hearings and trials;

        (4)  to secure and give evidence and obtain the attendance of witnesses;

    d.  under the **Additional Liability Coverages** —   Damage to the Property of Others —   submit to us within 60 days after the loss, a sworn statement of loss and exhibit the damaged property, if within the *insured*'s control;

    e.  submit within 60 days after the loss, evidence or affidavit supporting a claim under the **Additional Liability Coverages,** Credit Card, Fund Transfer Card, or Forgery and Counterfeit Money Coverage, stating the amount and cause of loss;

    f.  the *insured* shall not, except at the *insured's* own cost, voluntarily make any payment, assume any obligation or incur any expense other than for first aid to others at the time of the *bodily injury.*

4.  **Duties of an Injured Person —   Coverage F —   Medical Payments to Others.** The injured person or someone acting for the injured person will:

    a.  give us written proof of claim, under oath if required, as soon as practical;

    b.  authorize us to obtain copies of medical reports and records.

    The injured person shall submit to physical examination by a doctor selected by us when and as often as we reasonably require.

5.  **Payment of Claim —   Coverage F —   Medical Payments to Others.** Payment under this coverage is not an admission of liability by any *insured* or us.

6.  **Suit Against Us.** No action shall be brought against us unless there has been compliance with the policy provisions.

    No one shall have any right to join us as a party to any action against any *insured.* Further, no action with respect to Coverage **E** shall be brought against us until the obligation of the *insured* has been determined by final judgment or agreement signed by us.

7. **Bankruptcy of an *Insured*.** Bankruptcy or insolvency of any *insured* shall not relieve us of any of our obligations under this policy.

8. **Other Insurance —    Coverage E —    Personal Liability.** This insurance is excess over any other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

---

## SECTIONS I AND II —    PROPERTY AND LIABILITY CONDITIONS

1. **Policy Period and Changes.**

   a. The effective time of this policy is 12:01 A.M. at the ***residence premises.*** This policy applies only to loss under Section I, or ***bodily injury*** or ***property damage*** under Section **II,** which occurs during the policy period. This policy may be renewed for successive policy periods if the required premium is paid and accepted by us on or before the expiration of the current policy period. The premium will be computed at our then current rate for coverage then offered.

   b. Changes:

      (1) Before the end of any policy period, we may offer to change the coverage provided in this policy. Payment of the premium billed by us for the next policy period will be your acceptance of our offer.

      (2) This policy contains all agreements between you and us. Its terms may not be changed or waived except by endorsement issued by us. If a change requires a premium adjustment, we will adjust the premium as of the effective date of change. Additional or return premium of $3.00 or less will be waived.

2. **Concealment or Fraud.** This policy will be void if any ***insured*** has, before or after a loss:

   a. intentionally concealed or misrepresented any material fact or circumstance; or

   b. made false statements or engaged in fraudulent conduct relating to this insurance;

   with the intent to deceive.

3. **Liberalization Clause.** If we make a change which broadens coverage under this edition of our policy without additional premium charge, that change will automatically apply to your insurance as of the date we implement the change in your state.

   This liberalization clause does not apply to changes implemented through introduction of a subsequent edition of our policy.

4. **Cancellation.**

   a. You may cancel this policy at any time by returning it to us or by notifying us in writing of the date cancellation is to take effect. We may waive the requirement the notice be in writing by confirming the date and time of cancellation to you in writing.

   b. We may cancel this policy only for the reasons stated below by notifying you in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations. Proof of mailing shall be sufficient proof of notice.

      (1) When you have not paid the premium we may cancel at any time by notifying you at least 20 days before the date cancellation takes effect.

      (2) When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by notifying you at least 31 days before the date cancellation takes effect.

      (3) When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel if there has been a material misrepresentation of fact which if known to us would have caused us not to issue the policy or if the risk has changed substantially since the policy was issued. This can be done by notifying you at least 31 days before the date cancellation takes effect.

   c. When this policy is canceled, the premium for the period from the date of cancellation to the expiration date will be refunded. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us for cancellation, we will refund it within a reasonable time after the date cancellation takes effect.

5. **Non-Renewal.** We may elect not to renew this policy. We may do so by delivering to you, or mailing to you at your mailing address shown in the Declarations, written notice at least 31 days before the expiration date of this policy. Proof of mailing shall be sufficient proof of notice.

6. **Assignment.** Assignment of this policy shall not be valid unless and until we give our written consent.

7. **Our Right to Recover Payment.** You may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

   If an assignment is sought, the *insured* shall sign and deliver all related papers and cooperate with us in any reasonable manner.

   Subrogation does not apply under Section **II** to **Coverage F —   Medical Payments to Others** or **Additional Liability Coverages,** Damage to Property of Others.

8. **Death.** If any person named in the Declarations or the spouse, if a resident of the same household, dies:

   a. we insure the legal representative of the deceased, but only with respect to the premises and property of the deceased covered under the policy at the time of death.

   b. *insured* includes:

   (1) any member of the household who is an *insured* at the time of your death, but only while a resident of the **residence *premises;*** and

   (2) with respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

---

## POLICY DEFINITIONS

---

Throughout this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse if a resident of the same household, and "we," "us" and "our" refer to the Company providing this insurance. In addition, certain words and phrases are defined as follows:

1. **"Actual cash value"**

   a. When the damage to property is economically repairable, **actual cash value** means the cost of repairing the damage, less reasonable deduction for wear and tear, deterioration and obsolescence.

   b. When the loss or damage to property creates a total loss, **actual cash value** means the market value of property in a used condition equal to that of the destroyed property, if reasonably available on the used market.

   c. Otherwise, **actual cash value** shall mean the market value of new, identical or nearly identical property, less reasonable deduction for wear and tear, deterioration and obsolescence.

2. **"Bodily injury"** means:

   a. bodily harm, sickness or disease, including required care, loss of services and death resulting therefrom.

   **Bodily injury** does not include any communicable disease transmitted by any *insured* to any other person.

   b. personal injury:

   (1) arising out of one or more of the following offenses:

   (a) false arrest, detention or imprisonment, or malicious prosecution;

   (b) libel, slander or defamation of character; or

   (c) invasion of privacy, wrongful eviction or wrongful entry.

   (2) coverage does not include:

   (a) liability assumed by any *insured* under any contract or agreement except any indemnity obligation assumed by the *insured* under a written contract directly relating to the ownership, maintenance or use of the *insured location;*

**(b)** injury arising out of any illegal act committed by or at the direction of any *insured;*

**(c)** injury sustained by any person as a result of an offense directly or indirectly related to the employment of this person by any *insured;*

**(d)** injury arising out of the *business* pursuits of any *insured.* This exclusion does not apply to *bodily injury* to a *residence employee* arising out of and in the course of the *residence employee's* employment by any *insured;*

**(e)** injury arising out of civic or public activities performed for pay by any *insured;* or

**(f)** *punitive damages* awarded against any *insured.*

**3.** *"Business"* includes trade, profession or occupation.

**4.** *"Earthquake"* means shaking or trembling of the earth, whether caused by volcanic activity, tectonic processes or any other cause.

**5.** *"Insured"* means you and the following residents of your household:

**a.** your relatives;

**b.** any other person under the age of 21 who is in the care of any person named above.

Under **Section II — Liability Coverage,** *"insured"* also means:

**c.** with respect to animals or watercraft to which this policy applies, any person or organization legally responsible for these animals or watercraft which are owned by you or any person included in **a.** or **b.** A person or organization using or having custody of these animals or watercraft in the course of any *business,* or without permission of the owner is not an *insured;*

**d.** with respect to any vehicle to which this policy applies:

**(1)** any person while engaged in your employment or the employment of any person included in **a.** or **b.;** or

**(2)** any other person using the vehicle on an *insured location* with any *insured's* permission.

**6.** *"Insured location"* means:

**a.** the *residence premises;*

**b.** that part of any other premises, other structures and grounds, used by you as a residence and which is shown in the Declarations. This includes any premises, structures and grounds which are acquired by you during the policy period for your use as a residence;

**c.** any premises used by you in connection with the premises included in **a.** or **b.;**

**d.** any part of a premises not owned by any *insured* but where any *insured* is temporarily residing;

**e.** vacant land owned by or rented to any *insured* other than farmland;

**f.** land owned by or rented to any *insured* on which a one, two, three or four family dwelling is being constructed as a residence for any *insured;*

**g.** individual or family cemetery plots or burial vaults of any *insured;* or

**h.** any part of a premises occasionally rented to any *insured* for other than *business* purposes.

**7.** *"Occurrence"* means an accident, including exposure to conditions which results in:

**a.** *bodily injury;* or

**b.** *property damage;*

during the policy period. Repeated or continuous exposure to the same general conditions is considered to be one *occurrence.*

**8.** *"Personal Watercraft"* means jet skis, wet bikes or other craft, using a water jet pump powered by an internal combustion engine as the primary source of propulsion.

**9.** *"Pollutants"* means:

**a.** liquid fuels;

**b.** lead or any materials containing lead;

**c.**   asbestos or any materials containing asbestos;

**d.**   radon;

**e.**   formaldehyde or any materials containing formaldehyde;

**f.**   electric fields, magnetic fields, electromagnetic fields, power frequency fields, electromagnetic radiation or any other electric or magnetic energy of any frequency;

**g.**   carbon monoxide; or

**h.**   any other irritant or contaminant, including waste, vapor, fumes, acids, alkalis, chemicals or radioactive substances.

**10.**   *"Property damage"* means physical damage to or destruction of tangible property, including loss of use of this property.

   *Property damage* does not include loss caused by any communicable disease transmitted by any *insured.*

**11.**   *"Punitive damages"* means damages which are awarded to punish or deter wrongful conduct, to set an example, to fine, penalize or impose a statutory penalty, and damages which are awarded for any purpose other than as compensatory damages for *bodily injury* or *property damage.*

**12.**   *"Replacement cost"*

   **a.**   In case of loss or damage to buildings, *replacement cost* means the cost, at the time of loss, to repair or replace the damaged property with new materials of like kind and quality, without deduction for depreciation.

   **b.**   In case of loss to personal property, *replacement cost* means the cost, at the time of loss, of a new article identical to the one damaged, destroyed or stolen. When the identical article is no longer manufactured or is not available, *replacement cost* shall mean the cost of a new article similar to the one damaged or destroyed and which is of comparable quality and usefulness, without deduction for depreciation.

**13.**   *"Residence employee"* means an employee of any *insured* who performs duties in connection with the maintenance or use of the *residence premises,* including household or domestic services, or who performs duties elsewhere of a similar nature not in connection with the *business* of any *insured.*

**14.**   *"Residence premises"* means:

   **a.**   the one or two family dwelling, other structures and grounds; or

   **b.**   that part of any other building;

   where you reside and which is shown in the Declarations.

**15.**   *"Salvage"* means property having value and included in a covered loss.

# SPECIAL PROVISIONS —  FUNGI, WET OR DRY ROT, OR BACTERIA

## SECTION I —  PROPERTY COVERAGES

**PERSONAL PROPERTY LOSSES WE DO NOT COVER**

The following is added:

11. ***Fungi,* Wet or Dry Rot, or Bacteria** meaning the presence, growth, proliferation or spread of ***fungi,*** wet or dry rot, or bacteria. This exclusion does not apply to the extent coverage is provided for in the **Additional Coverage 9. *Fungi,* Wet or Dry Rot, or Bacteria** under **Section I —  Property Coverages.**

**ADDITIONAL PROPERTY COVERAGES**

9. ***Fungi,* Wet or Dry Rot, or Bacteria.** We will pay up to $10,000 for:

   a. the direct physical loss to covered property caused by ***fungi,*** wet or dry rot, or bacteria;

   b. the cost to remove ***fungi,*** wet or dry rot, or bacteria from covered property;

   c. the cost to tear out and replace any covered property as needed to gain access to the ***fungi,*** wet or dry rot, or bacteria;

   d. the cost of any testing of air or property to confirm the absence, presence or level of ***fungi,*** wet or dry rot, or bacteria, whether performed prior to, during or after removal, repair, restoration or replacement. The cost of such testing will be provided only to the extent that there is a reason to believe there is a presence of ***fungi,*** wet or dry rot, or bacteria; and

   e. **Additional Living Expenses** or **Fair Rental Value** loss covered under **Coverage D —  Loss of Use.**

   This coverage only applies when such loss or costs:

   f. are a result of a loss we cover that occurs during the policy period;

   g. are not excluded under **Personal Property Losses We Do Not Cover;** and

   h. only if all reasonable means are used to save and preserve the property from further damage.

   This coverage does not apply to loss to trees, shrubs or other plants.

   The $10,000 limit of liability is the most we will pay for the total of all loss or costs for Coverages C and D, and does not increase the limit of liability for these coverages, regardless of the number of locations or number of claims made.

## DEFINITIONS

The following is added:

16. **"*Fungi*"** means any type or form of fungus, including yeast, mold or mildew, blight or mushroom and any mycotoxins, spore, scents or other substances, products or byproducts produced, released by or arising out of ***fungi,*** including growth, proliferation or spread of ***fungi*** or the current or past presence of ***fungi.*** However, this definition does not include any ***fungi*** intended by the ***insured*** for consumption.

# SPECIAL PROVISIONS —  COLLAPSE

## SECTION I —  PROPERTY COVERAGES

**PERSONAL PROPERTY LOSSES WE COVER**

Item **12. Collapse** is deleted.

**ADDITIONAL PROPERTY COVERAGES**

The following is added:

**10. Collapse.**

  **a.** We insure for direct physical loss to covered property involving collapse of the dwelling or any part of the dwelling if the collapse was caused by one or more of the following:

    **(1)** The perils named under **Personal Property Losses We Cover,** with exception of item **12. Collapse** which is previously deleted in this endorsement;

    **(2)** Decay that is hidden from view, unless the presence of such decay is known to an ***insured*** prior to collapse;

    **(3)** Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an ***insured*** prior to collapse;

    **(4)** Weight of contents, equipment, animals or people;

    **(5)** Weight of rain which collects on a roof; or

    **(6)** Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

  **b.** Loss to an awning, fence, patio, deck, pavement, swimming pool, hot tub or spa, including their filtration and circulation systems, landscape sprinkler system, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under **a.(2)** through **(6)** above, unless the loss is a direct result of the collapse of the dwelling or any part of the dwelling to which it is attached.

  **c.** With respect to this coverage:

    **(1)** Collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its current intended purpose.

    **(2)** A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse.

    **(3)** A part of a building that is standing is not considered to be in a state of collapse even if it has separated from another part of the building.

    **(4)** A building or any part of a building that is standing is not considered to be in a state of collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

This coverage does not increase the limit of liability that applies to the damaged covered property.

# SPECIAL PROVISIONS — COLORADO

## SECTION I — PROPERTY CONDITIONS

Item **5. Loss Settlement** is deleted and replaced by the following:

**5. Loss Settlement**

  **a.** **Full Value.** Personal property under Coverage C or Option E — Scheduled Personal Property, not otherwise described under **Loss Settlement, 5.b.,** ***Actual Cash Value,*** below, and awnings, carpeting, domestic appliances, outdoor antennas and outdoor equipment, whether or not attached to buildings, at ***replacement cost*** at the time of loss subject to the following:

    **(1)** We will pay the full cost of repair or replacement, but not exceeding the smallest of the following amounts:

      **(a)** the limit of liability of this policy applicable to the damaged, destroyed or stolen property;

      **(b)** the ***replacement cost*** of the property or any part;

      **(c)** the full amount actually and necessarily spent by the ***insured*** in repairing or replacing the property or any part;

    **(d)** the direct financial loss you incur; or

    **(e)** our pro rata share of any loss when divided with any other valid and collectible insurance applying to the covered property at the time of loss.

**(2)** We will pay the difference between *actual cash value* and *replacement cost* only after the damaged, destroyed or stolen property has actually been repaired or replaced.

**(3)** You may make a claim for loss on an *actual cash value* basis and then make a claim, within 180 days after loss, for any additional liability under *replacement cost,* after you have repaired or replaced the property.

This **Loss Settlement, 5.a.,** Full Value, is an optional coverage and applicable only if purchased and shown in the Declarations.

**b.** **Actual Cash Value.**

The following property:

**(1)** antiques, fine arts, paintings and similar articles of rarity or antiquity which cannot be replaced;

**(2)** memorabilia, souvenirs, collectors items and similar articles whose age or history contribute to their value;

**(3)** personal property not maintained in good or workable condition;

**(4)** personal property that is outdated or obsolete and is stored or not being used;

**(5)** property not owned by any *insured;* and

**(6)** motorized land vehicles or earth moving or excavating equipment used to service the *residence premises;* and

if Full Value, **5.a.,** is not purchased and shown in the Declarations, then;

**(7)** all other personal property; and

**(8)** awnings, carpeting, domestic appliances, outdoor antennas and outdoor equipment, whether or not attached to buildings;

at *actual cash value* at the time of loss not exceeding the amount necessary to repair or replace.

Item **8. Suit Against Us,** is deleted and replaced by the following:

**8.** **Suit Against Us.** No action shall be brought against us unless there has been compliance with the policy provisions.

---

## SECTION II —   LIABILITY COVERAGES

---

**LIABILITY LOSSES WE DO NOT COVER**

Item **1.a.** is deleted and replaced by:

**a.** which:

**(1)** is expected or intended by any *insured* or which is the foreseeable result of an act or omission intended by any *insured;* or

**(2)** results from violation of:

    **(a)** criminal law; or

    **(b)** local or municipal ordinance

committed by, or with the knowledge or consent of any *insured.*

This exclusion applies even if:

**(3)** such *insured* lacks the mental capacity to form intent;

**(4)** such *bodily injury* or *property damage* is of a different kind or degree than expected or intended; or

**(5)** such *bodily injury* or *property damage* is sustained by a different person, or persons, than expected or intended.

This exclusion applies whether or not any *insured* is charged or convicted of a violation of criminal law, or local or municipal ordinance.

Item **2.a.(3)** is deleted.

---

## SECTIONS I AND II — PROPERTY AND LIABILITY CONDITIONS

---

Item **4. Cancellation** is deleted and replaced by the following:

**4.** **Cancellation.**

   **a.** You may cancel this policy at any time by returning it to us or by notifying us in writing of the date cancellation is to take effect. We may waive the requirement the notice be in writing by confirming the date and time of cancellation to you in writing.

   **b.** We may cancel this policy only for the reasons stated below by notifying you in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations. Proof of mailing shall be sufficient proof of notice.

      **(1)** When you have not paid the premium we may cancel at any time by notifying you at least 20 days before the date cancellation takes effect.

      **(2)** When this policy has been in effect for less than 30 business days and is not a renewal with us, we may cancel for any reason by notifying you at least 30 days before the date cancellation takes effect.

      **(3)** When this policy has been in effect for 30 business days or more, or at any time if it is a renewal with us, we may cancel if there has been a material misrepresentation of fact which if known to us would have caused us not to issue the policy or if the risk has changed substantially since the policy was issued. This can be done by notifying you at least 30 days before the date cancellation takes effect.

   **c.** When this policy is canceled, the premium for the period from the date of cancellation to the expiration date will be refunded. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us for cancellation, we will refund it within a reasonable time after the date cancellation takes effect.

Item **5. Non-Renewal** is deleted and replaced by the following:

**5.** **Non-Renewal.** We may elect not to renew this policy. We may do so by delivering to you, or mailing to you at your mailing address shown in the Declarations, written notice at least 30 days before the expiration date of this policy. Proof of mailing shall be sufficient proof of notice.

---

## DEFINITIONS

---

The opening paragraph is deleted and replaced by:

Throughout this policy, "you" and "your" refer to the named *insured* shown in your Declarations; and if a resident of the same household:

   **a.** the spouse;

   **b.** the civil partner by civil union licensed and certified by the state; or

   **c.** the *domestic partner.*

"We", "us" and "our" refer to the underwriting company providing this insurance as shown in your Policy Declarations. In addition, certain words and phrases are defined as follows:

Item **2.b.(2)(b)** is deleted and replaced by the following:

      **(b)** injury resulting from violation of:

         **i.** criminal law; or

         **ii.** local or municipal ordinance

         committed by, or with the knowledge or consent of any *insured.*

**17.** *Domestic partner* means a person living as a continuing partner with you and:

      **(1)** is at least 18 years of age and competent to contract;

    **(2)**  is not a relative; and

    **(3)**  shares with you the responsibility for each other's welfare, evidence of which includes:

        **(a)**  the sharing in domestic responsibilities for the maintenance of the household; or

        **(b)**  having joint financial obligations, resources or assets; or

        **(c)**  one with whom you have made a declaration of domestic partnership or similar declaration with an employer or government entity.

***Domestic partner*** does not include more than one person, a roommate whether sharing expenses equally or not or one who pays rent to the named ***insured.***

All other provisions of this policy apply.

This policy is signed on our behalf by our President and Secretary.

James MacPhee
President

Mark C. Touhey
Vice President and Secretary

This policy includes copyrighted material of Insurance Services Office, Inc. with its permission.

CHO-1227/EP 11/89
G22

# Exhibit B



A Liberty Mutual Company

Safeco Insurance Company Of America
P.O. Box 5014
Scranton, PA 18505-5014

📞 CONTACT US

Chrystal.Grubaugh@LibertyMutual.com

Toll-free: 888-918-0965 x 6778

Fax: 833-703-0571

**Safeco Insurance Company Of America**
P.O. Box 5014
Scranton, PA 18505-5014

Safeco.com

PATRICK THORNTON
██████████████
██████████████

September 30, 2021

Claim Number:          ██████████████
Date of Incident:      08/09/2021
Insured:               PATRICK THORNTON, JESSICA THORNTON
Policy Number:         ██████████████
Loss Location:         ██████████████████████████
Underwriting Company:  Safeco Insurance Company Of America

Dear Patrick Thornton,

We're writing to inform you that we completed our review of your claim based on information provided by you or on your behalf. The following is a summary of our findings and position on coverage for this claim.

The insurance policy provides coverage subject to policy terms and conditions. Based on our review of the policy, there is no coverage available for your loss as outlined below.

**Claim Details**

Our first notice of loss was on  09/29/2021. It was reported that some of your personal property items were damaged while in transit by a hired moving company.

Our review of your claim revealed the following relevant information:
Appears the hired moving company did not properly pack your personal property, while moving, and when the truck arrived it was noticed a lot of your property was broken.

**Policy Information**

We issued the following  Renters Policy to PATRICK THORNTON and JESSICA THORNTON
        Policy Number:          ██████████████

1PDEN First Party Coverage Denial 047091356-01

Page 1 of 2

**Safeco Insurance**
A Liberty Mutual Company

Policy Period:          07/12/2021 - 07/12/2022

The applicable Policy form and relevant endorsements (your coverages) state in part:

**SECTION I — PROPERTY CONDITIONS**
…
**12. No Benefit to Bailee.** We will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this policy.
…

The Policy is incorporated by reference into this letter in its entirety.  Although we have attempted to include all of the policy provisions that we believe are pertinent to this matter, the provisions set forth above in no way replace the provisions of the actual Policy issued. If you have any questions regarding the terms contained in the applicable Policy, you should refer to the Policy itself. To the extent there is any discrepancy between this letter and the Policy, the Policy controls.

**Our Coverage Position**

Based upon the information available to date, the grounds for our denial of coverage under the Policy, or under applicable law, with respect to the claim, include, but are not limited to, the following:

Unfortunately, your policy does not provide coverage for damages caused by a person or organization holding, storing or transporting property for a fee.

Based on these grounds, no insurance coverage is available to you for the claim. While we sought to identify and address all relevant insurance coverage considerations above, these specific considerations are not intended and should not be understood as a waiver of any other right or basis we may have to deny coverage, and we reserve all rights in this regard.

If you have any information you believe may impact our coverage position, please bring it to our immediate attention, so we may assess whether such information or pleading impacts our coverage position or obligations.

**We're Here To Help**

We understand this is disappointing news and we want to make sure you fully understand our decision. If you have any questions or concerns, please feel free to call or email me anytime.

Sincerely,

CHRYSTAL GRUBAUGH
Claims Department
888-918-0965 x 6778