UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| PATRICK THORNTON and JESSICA THORNTON, | ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION NO. |
| VS. | ) ) | 3:23-CV-0043-G |
| AAA COLORADO, INC., | ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Before the court is the defendant's motion to dismiss for lack of personal

jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) (docket entry 13).

For the reasons below, the motion to dismiss is **GRANTED**.

## I. BACKGROUND

This is a dispute between an insured married couple and their insurance broker

and insurance company.  Plaintiffs' Amended Complaint ("Complaint") (docket

entry 9).  The plaintiffs Patrick and Jessica Thornton (collectively, "the Thorntons"

or "the plaintiffs") purchased renters insurance through the defendant AAA Colorado,

Inc. ("AAA Colorado"), an insurance broker.  *Id*. ¶ 5.  The defendant Safeco

Insurance Company of America ("Safeco") was the insurer of the renters policy in question. *Id.* ¶ 6. Only AAA Colorado moves to dismiss the complaint for lack of personal jurisdiction. Defendant AAA Colorado, Inc.'s Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction and Brief in Support Thereof (docket entry 13) ("Motion to Dismiss"). Instead, Safeco has answered the Thorntons' complaint. Safeco Insurance Company of America's Answer to Plaintiff's Amended Complaint (docket entry 12). And on July 26, 2023, the Thorntons and Safeco filed a joint motion to dismiss with prejudice the plaintiffs' claims against Safeco. Joint Motion for Dismissal with Prejudice (docket entry 32). The court granted the motion. Order of Dismissal with Prejudice (docket entry 33). Consequently, only the plaintiffs' claims against AAA Colorado remain.

In August 2021, the Thorntons moved from Centennial, Colorado to Irving, Texas. Complaint ¶ 14. To insure their personal property during the move, Patrick Thornton ("Thornton") asked AAA Colorado to obtain an insurance policy on his behalf that would cover property loss during his move. *Id.* As asserted in the complaint, Thornton discussed this purchase before the move with AAA Colorado agent Jacob Peters ("Peters"). *Id.* The Thorntons allege that Peters "expressly represented that AAA [Colorado] would provide an insurance policy with such coverage." *Id.* According to the Thorntons, they relied on Peters's representations

- 2 -

that Safeco's policy would cover their move in purchasing the renters policy through AAA Colorado. *Id.*

Relevant to the jurisdictional analysis, when Thornton first contacted Peters about renters insurance on July 7, 2021, Thornton stated "we don't have a contract on a new place yet." Exhibit C, *attached to* Plaintiff's Appendix in Support of their Response to Defendant AAA Colorado, Inc.'s Motion to Dismiss for Lack of Jurisdiction (docket entry 28) (phone call recording from July 7, 2021, at 1:50 minutes).[1] To clarify, Peters asked, "so you don't have an address in Texas yet?" *Id.* In response, Thornton said, "no I don't . . . nothing is under contract." *Id.* Peters was located at his home in Erie, Colorado during this communication and any other communication with Thornton. Motion to Dismiss at 6 (citing Exhibit C, *attached to* Motion to Dismiss ("Peters' Declaration") ¶ 3). On July 12, 2021, Thornton called AAA Colorado and spoke with a different insurance agent. Defendant AAA Colorado, Inc.'s Reply Brief in Support of its Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction ("Reply") (docket entry 30) at 3 (citing Exhibit G, *attached to* Plaintiff's Appendix in Support of their Response to Defendant AAA Colorado, Inc.'s Motion to Dismiss for Lack of Jurisdiction (phone call recording

---

[1] As discussed *infra*, the parties engaged in jurisdictional discovery, and the jurisdictional discovery produced phone call recordings that are cited here. The phone call recordings are on file with the court. Notice of Manual Filing of Flash Drive (docket entry 29).

from July 12, 2021, at 2:40 minutes)).  According to AAA Colorado, neither Peters nor any other employee who provided services related to the policy were located in Texas while providing those services or communicating with the plaintiffs.  Exhibit A, *attached to* Motion to Dismiss; Peters' Declaration.

The renters policy was effective July 12, 2021, through July 12, 2022.  Exhibit A, *attached to* Complaint ("Renters Policy").  The policy's residence premises and mailing address were located in Centennial, Colorado.  *Id.*  On or about August 9, 2021, the Thorntons loaded their personal property onto a moving truck operated by a company called U-Pack.  Complaint ¶ 15.  Additionally, the Thorntons hired a company named Moving Staffers to "assist with the move."  *Id.*

On or about August 26, 2021, the Thorntons' property arrived at their new home in Irving, Texas.  Complaint ¶ 16.  The property arrived "badly damaged and or destroyed."  *Id.*  The Thorntons estimated the value of the damaged property to be $27,000.  *Id.*  The Thorntons filed a claim with Moving Staffers.  *Id.*  Moving Staffers offered $2,013 to settle the claim.  *Id.*  The Thorntons allege that although their initial reaction was to reject Moving Staffers' offer, Thornton accepted the settlement offer after a Colorado AAA agent advised him to accept it.  Complaint ¶¶ 17-18.  On or about September 28, 2021, Thornton spoke to Peters[2] regarding the damaged

---

[2]       The complaint refers to Peters as Jacobs.  Complaint ¶¶ 17-19.  Jacob is Peters's first name.  Peters' Declaration.  The complaint also alleges that the

(continued...)

- 4 -

property.  Complaint ¶ 18; Exhibit H, *attached to* Plaintiff's Appendix in Support of their Response to Defendant AAA Colorado, Inc.'s Motion to Dismiss for Lack of Jurisdiction ("September Recording") (phone recording from September 28, 2021). Thornton told Peters that they "had a bunch of stuff damaged . . . by the moving company," and "it was probably damaged during transport . . . ." September Recording (phone recording from September 28, 2021, at 0:25 minutes). Importantly, Thornton avers that during this conversation he "was led to believe that Safeco would be paying out on a claim for the losses suffered and that accepting the payment [from] Moving Staffers would not prejudice any rights [we] may have to recover for the losses we suffered."  Exhibit A, *attached to* Plaintiff's Appendix in Support of their Response to Defendant AAA Colorado, Inc.'s Motion to Dismiss for Lack of Jurisdiction ("Thornton's Declaration") ¶ 7.

The recording of the September 28, 2021 phone call was produced in jurisdictional discovery and is on file with the court.  After Thornton described his move to Texas and the damaged personal property to Peters, the recording includes the following exchange:

> **Thornton:** I'm wondering if any of that is covered under my renters policy? . . . I wanted to ask you about it

---

[2](...continued)
"insurance agent who discussed with Mr. Thornton on what policy would provide such coverage was Jacob Peters."  Complaint ¶ 14.  Therefore, the court will construe any reference to Jacobs in the complaint to mean Peters.

because you know the in's-and-out's of it, so I wanted to ask you about it before I called and, like, filed a claim . . . .[3]

**Peters**:       So long as the damage was during the effective period . . . yeah, you can file claim during move . . . make sure they get the third party information. Then we'll try to subrogate that loss . . . I wouldn't even tell them any thing . . .  just file a claim with Safeco, make sure to have all [the] relevant information [about Moving Staffers].[4]

Later in the phone call, Peters repeats his recommendation that "[he] wouldn't alert [Moving Staffers] you're going to file a claim." September Recording (phone call recording from September 28, 2021, at 5:49 minutes).  Based upon the court's review of the September 28, 2021 recording, Peters did not tell Thornton that Safeco would "payout the claim," only that Thornton could file a claim with Safeco.  *Compare* Thornton's Declaration ¶ 7 *with* September Recording.[5]

---

[3]       September Recording (phone call recording from September 28, 2021, at 1:13 minutes).

[4]       September Recording (phone call recording from September 28, 2021, at 2:23 minutes).

[5]       The court does not rely on this or any other factual discrepancy between the complaint and the phone recordings to reach its ultimate conclusion.  See *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir.), *cert. denied*, 513 U.S. 930 (1994) (instructing courts to accept uncontroverted allegations of the complaint as true and that "conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor for purposes of determining whether a *prima facie* case for personal jurisdiction exists.").  Because of the nature of the evidence, the court describes the

(continued...)

Additionally, the Thorntons allege, during the September 28, 2021 call, Peters advised Thornton "that he should accept the offer from Moving Staffers" and "once a claim was made on the [r]enters [p]olicy, Safeco would 'subrogate' the claim and seek to recover the remainder from Moving Staffers on his behalf."  Complaint ¶ 18.  The phone call produced in jurisdictional discovery, however, does not include such assurances.  *See* September Recording.  When Thornton referenced Moving Staffers' $2,000 settlement offer, Peters only response was:  "Okay."  *Id.* (at 0:57 minutes).  Later in the conversation,  Thornton asked:  "I don't have to wait until they resolve [the claim]?"  *Id.* (at 8:40 minutes).  Peters responded:  "No, no . . we'll pull the claim . . . if Safeco has collected . . . we'll type up [a] letter of experience . . . saying subrogation loss in case your home insurance re-rates . . . ."  *Id.* Although it is unclear what Thornton was asking, Peters responded with how to reduce higher home insurance premiums.  See *id.*  From the court's review of the recording, Peters did not explicitly tell Thornton that he "should accept the offer from Moving Staffers."  *Compare* Complaint ¶ 18 *with* September Recording.

---

[5](...continued)
phone call recordings to convey the evidence the plaintiffs submitted in support of their response.

Following this conversation, on September 29, 2021, Thornton filed a claim with Safeco under his renters insurance policy.  Complaint ¶ 19.  On September 30, 2021, Safeco denied the claim on the grounds of no coverage. *Id.* ¶¶ 19-20; Exhibit B, *attached to* Complaint ("Denial Letter).  Safeco claimed that the renters policy excluded damage "caused by a person or organization holding, storing or transporting property for a fee."  Denial Letter.

The Thorntons filed their original petition against AAA Colorado and Safeco in a Texas state court on November 14, 2022.  Defendant Safeco Insurance Company of America's Notice of Removal ("Notice of Removal") (docket entry 1); Original Petition (docket entry 1-5).  Safeco timely removed the case to this court on January 6, 2023.  Notice of Removal.  AAA Colorado consented to Safeco removing the case to federal court.  Defendant AAA Colorado, Inc.'s Consent to Removal (docket entry 3).

On January 24, 2023, the Thorntons filed an amended complaint. Complaint.  Currently, the Thorntons claim that AAA Colorado violated the Texas Deceptive Trade Practices Act and the Colorado Consumer Protection Act.  *Id.* ¶¶ 23-37.  Additionally, the Thorntons assert a negligence claim against AAA Colorado for failure "to obtain [an] insurance policy that would sufficiently cover the [p]roperty for their cross-country move," *id.* ¶ 40, or "inform them that such coverage cannot be provided . . . ." *id.* ¶ 42.

- 8 -

On February 7, 2023, in lieu of an answer, AAA Colorado filed the instant motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).  Motion to Dismiss.  After several extensions of time, the Thorntons filed a motion for jurisdictional discovery on April 20, 2023.  Plaintiffs' Motion for Jurisdictional Discovery (docket entry 20); Plaintiffs' Brief in Support of Their Motion for Jurisdictional Discovery (docket entry 21).  The court ordered an expedited briefing schedule on whether to allow jurisdictional discovery.  Electronic Order (docket entry 22).  AAA Colorado, however, agreed to jurisdictional discovery.  *See* Agreed Order (docket entry 23).  The court issued an agreed order, permitting the Thorntons to "undertake jurisdictional discovery for a period for thirty days."  *Id.* at 1.  During the discovery period, the court granted another motion for extension of time.  Plaintiffs' Fourth Motion for Continuance of Deadline to Respond to Defendant AAA Colorado, Inc.'s Motion to Dismiss (docket entry 24); Electronic Order (docket entry 25).

On June 26, 2023, the Thorntons filed their response to AAA Colorado's motion to dismiss.  Plaintiffs' Response to Defendant AAA Colorado, Inc.'s Motion to Dismiss for Lack of Jurisdiction (docket entry 26); Plaintiffs' Brief in Support of their Response to Defendant AAA Colorado, Inc.'s Motion to Dismiss for Lack of Jurisdiction ("Response") (docket entry

- 9 -

27).  To support their response, the plaintiffs filed an appendix with the

evidence produced in jurisdictional discovery.  Plaintiffs' Appendix in Support

of their Response to Defendant AAA Colorado, Inc.'s Motion to Dismiss for

Lack of Jurisdiction ("Appendix to Response") (docket entry 28).  The

evidence includes:  Thornton's declaration, Thornton's phone records, and

phone call recordings between Thornton and AAA Colorado employees.  *Id.*

    AAA Colorado filed its reply on July 10, 2023.  Reply.  Additionally,

AAA Colorado filed a supplement to its reply to clarify that some arguments

made in the reply had been resolved.[6]  Defendant AAA Colorado, Inc.'s

Supplement to its Reply Brief in Support of Rule 12(b)(2) Motion to Dismiss

---

    [6]     In their response, the plaintiffs asserted that AAA Colorado did not
produce all the discoverable phone call recordings.  Response ¶ 25 ("The records still
show that there are still call recordings between Plaintiffs and AAA that have not
been produced from 9/28/21(1), 9/30/21(1), 10/1/21(2), and 10/13/21(2).").  In its
reply, AAA Colorado denied that it had withheld recordings, but AAA Colorado
noted it is possible that the plaintiffs are referencing phone calls that produced no
recordings because the time elapsed on those calls were "0:00" minutes.  Reply at 16-
17.  Additionally, AAA Colorado noted discrepancies in the plaintiffs' call records
that render the records unreliable.  *Id.* at 16.  These records, AAA Colorado argued,
showed no outgoing or incoming calls were made to or from AAA Colorado on
October 11, 2021, but AAA Colorado nevertheless produced two calls from that date.
*Id.* at 16.  Another discrepancy AAA Colorado pointed out was that a phone call from
October, 15, 2021 elapsed "0:00" so no call was recorded.  *Id.* at 16-17.  In the
supplement to the reply, AAA Colorado clarified that since filing the reply it
discovered that a separate phone number associated with AAA Colorado in the phone
records "appears to track with the two phone recordings from October 11, 2021."
Supplement to Reply.  Additionally, the parties have agreed "[t]here is no longer a
dispute between the parties as to the production of a call recording on" October 15,
2021.  *Id.* at 2.

- 10 -

for Lack of Personal Jurisdiction ("Supplement to Reply") (docket entry 31).

Originally in AAA Colorado's reply brief, the defendant argued there were

discrepancies in the plaintiffs' phone records.  Reply at 16-17.  In the

supplement, AAA Colorado clarified for the court's benefit that any

discrepancies has been resolved between the parties.  Supplement to Reply.

The motion is now ripe for decision.

## II.  ANALYSIS

### A.  The Factual Standard:  *Prima Facie* Case

"When a nonresident defendant presents a motion to dismiss for lack of

personal jurisdiction, the plaintiff bears the burden of establishing the district court's

jurisdiction over the nonresident." *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th

Cir. 1985).  If the district court chooses to decide the matter without an evidentiary

hearing, the plaintiff can meet its burden by presenting a prima facie case for personal

jurisdiction.  *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir.), *cert. denied*, 513 U.S. 930

(1994) (citation omitted).  The court will take the allegations of the complaint as

true, except where they are controverted by opposing affidavits, and all conflicts in

the facts are resolved in favor of the plaintiff.  *Id.* (citation omitted).  In making its

determination, the court may consider affidavits, interrogatories, depositions, oral

testimony, or any combination of recognized discovery methods.  *Stuart*, 772 F.2d at

1192.  The court is not required to accept as true conclusory allegations, even if

uncontroverted, in its prima-facie-case analysis.  *Panda Brandywine Corporation v.*

*Potomac Electric Power Company*, 253 F.3d 865, 869 (5th Cir. 2001) (per curiam).

### b.  Legal Requirements

A federal district court may exercise personal jurisdiction over a nonresident

defendant if:  (1) the long-arm statute of the forum state permits the exercise of

personal jurisdiction over the defendant; and (2) the exercise of such jurisdiction by

the forum state is consistent with due process under the United States Constitution.

*Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002).  A defendant is amenable to the

personal jurisdiction of a federal court sitting in diversity to the same extent that it

would be amenable to the jurisdiction of a state court in the same forum.  *Pedelahore*

*v. Astropark, Inc.*, 745 F.2d 346, 347 (5th Cir. 1984).  Applying state law, this court

must first determine whether Texas, the forum state, could assert long-arm

jurisdiction.  *Id.*  Texas's long-arm statute confers jurisdiction to the limits of the

federal constitution.  *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999).  The

court, therefore, need only concern itself with the federal due process inquiry.  *Id.*

### c.  Due Process Requirements

Due process requires the satisfaction of three elements to exercise personal

jurisdiction over a nonresident defendant:  (1) the nonresident must have some

minimum contact with the forum that results from an affirmative act on its part such

that the nonresident defendant could anticipate being haled into the forum state's

courts; (2) the claim must arise out of or be related to those activities; and (3) it must be fair or reasonable to require the nonresident to defend the suit in the forum state. *Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir.) (citation omitted), *cert. denied*, 548 U.S. 904 (2006); see also *Burger King Corporation v. Rudzewicz*, 471 U.S. 462, 474-78 (1985).  The Due Process Clause ensures that persons have a "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign[.]" *Burger King,* 471 U.S. at 472 (quotation omitted).

       To establish minimum contacts with the forum, a nonresident defendant must do some act by which it "purposefully avails itself of the privilege of conducting activities within the forum [s]tate, thus invoking the benefits and protections of its laws." *Burger King*, 471 U.S. at 474-75 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).  The unilateral activity of one asserting a relationship with the nonresident defendant does not satisfy this requirement.  *Hanson*, 357 U.S. at 253. In determining whether the exercise of jurisdiction is appropriate, the Supreme Court has focused less on the defendant's presence in the forum state as a means to establish jurisdiction and looked increasingly to whether a defendant's contacts with the forum state make it reasonable to require the defendant to defend the particular suit in that forum.  *Quill Corporation v. North Dakota*, 504 U.S. 298, 307 (1992).

       Two types of *in personam* jurisdiction may be exercised over a nonresident defendant:  specific jurisdiction and general jurisdiction.  *Bristol-Myers Squibb*

- 13 -

*Company v. Superior Court of California*, 582 U.S. 255, 262 (2017).  Specific

jurisdiction exists if the cause of action "arises from or relates to the defendant's

contact with the forum state."  *Stripling v. Jordan Production Company, LLC*, 234 F.3d

863, 871 (5th Cir. 2000) (internal quotation marks and citations omitted).  General

jurisdiction, on the other hand, may be found when the nonresident's contacts with

the forum are "so continuous and systematic as to render [the nonresident]

essentially at home in the forum [s]tate."  *Daimler AG v. Bauman*, 571 U.S. 117, 127

(2014) (internal quotation marks and citations omitted).

Under either a specific or general jurisdiction analysis, "the constitutional

touchstone remains whether the defendant purposefully established 'minimum

contacts' in the forum [s]tate."  *Burger King*, 471 U.S. at 474 (citation omitted).  The

"purposeful availment" requirement of the minimum contacts inquiry "ensures that a

defendant will not be haled into a jurisdiction solely as a result of 'random,'

'fortuitous,' or 'attenuated' contacts . . . or of the unilateral activity of another party

or a third person."  *Id.* at 475 (internal quotation marks and citations omitted).  A

plaintiff must establish a substantial connection between the nonresident defendant

and the forum state.  *Jones v. Petty-Ray Geophysical, Geosource, Inc.*, 954 F.2d 1061,

1068 n.9 (5th Cir.), *cert. denied*, 506 U.S. 867 (1992).

A court must consider all factors when making the purposeful availment

inquiry, as "no single factor, particularly the number of contacts, is determinative."

*Stuart*, 772 F.2d at 1192.  "[W]hether the minimum contacts are sufficient to justify subjection of the non-resident to suit in the forum is determined not on a mechanical and quantitative test, but rather under the particular facts upon the quality and nature of the activity with relation to the forum state."  *Mississippi Interstate Express, Inc. v. Transpo, Inc.*, 681 F.2d 1003, 1006 (5th Cir. 1982).

## B. Application[7]

AAA Colorado contends that this court lacks personal jurisdiction because "an unsolicited call to Mr. Peters is no evidence that AAA Colorado purposely availed itself of the benefits and protections of Texas law."  Motion to Dismiss at 14.

---

[7]       The Thorntons assert only that the court has specific jurisdiction over AAA Colorado.  *See* Response ¶¶ 3, 18-19, 21-27.  On the present record, the court concludes that it does not have general jurisdiction.  To make a *prima facie* case that a court has general jurisdiction over a nonresident defendant, a plaintiff must prove that the defendant's contacts with the forum state are "so continuous and systematic as to render [the defendant] essentially at home" in the state.  *Monkton Insurance Services, Limited v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014) (quoting *Daimler*, 571 U.S. at 139).  After jurisdictional discovery, the only "contacts" the plaintiffs were able to produce are records of phone calls that Thornton made or received from AAA Colorado after moving to Texas.  *See generally* Appendix to Response.  Taken together, these contacts are not so continuous and systematic as to make AAA Colorado at home in Texas, and therefore, the court does not have general jurisdiction over it. See *Perkins v. Benguet Consolidated Mining Company*, 342 U.S. 437, 447-49 (1952) (concluding that the court did have general jurisdiction because Ohio had essentially become the foreign corporation's temporary principal place of business); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415-19 (1984) (finding that the court did not have general jurisdiction even where the nonresident defendant negotiated a contract in Texas, purchased helicopters from Texas, trained personnel in Texas, and had monetary transactions involving a Texas bank).

Further, the defendant argues that its only contact with Texas resulted from the "unilateral activity and 'mere fortuity' that Plaintiffs happened to be new residents of Texas at the time of [the] call." *Id.* at 14-15.

The Thorntons argue that there is personal jurisdiction because AAA Colorado's actions were purposefully directed towards Texas and this suit resulted from the injuries arising from those actions. Response ¶ 21. The Thorntons also contend that because AAA Colorado committed one or more torts in Texas, there is specific jurisdiction. *Id.* ¶ 22. Specifically, the Thorntons allege that AAA Colorado violated the Texas Insurance Code, the Colorado Consumer Protection Act, the Texas Deceptive Trade Practices Act, and "negligence through misrepresentations of coverage through the renter's insurance policy at issue." *Id.* Finally, the plaintiffs argue that because the policy was "intended" to cover personal property outside of Colorado, the court has personal jurisdiction over AAA Colorado. *Id.* ¶ 26.

Due process permits an exercise of specific jurisdiction only when the defendant "'purposefully directed' [its] activities at residents of the forum." *Burger King*, 471 U.S. at 472. Consequently, the court's analysis must focus on "the relationship among the defendant, the forum, and the litigation." *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977). But a minimum-contacts analysis involves more than counting the nonresident's contacts with the forum. *Stuart*, 772 F.2d at 1189-90. Again, a court cannot exercise personal jurisdiction over a party when the foreign

party's contacts with the forum state are "fortuitous" or "attenuated," or arise from the unilateral activity of another party. *Burger King*, 471 U.S. at 475 (noting that the "unilateral activity of another party" cannot produce minimum contacts for personal jurisdiction).

Here, AAA Colorado had no contacts with Texas beyond the phone calls with the plaintiffs, which occurred because of the Thorntons' unilateral act – moving to Texas. AAA Colorado issued a Colorado renters policy to Colorado residents. *See* Renters Policy; Exhibit C, *attached to* Plaintiff's Appendix in Support of their Response to Defendant AAA Colorado, Inc.'s Motion to Dismiss for Lack of Jurisdiction) (phone call recording from July 7, 2021, at 1:50 minutes) (Thornton: "[W]e don't have a new place yet [in Texas]."). The Thorntons' relocation to Texas does not show that AAA Colorado purposefully availed itself of the privilege of conducting activities in Texas. See *Hanson*, 357 U.S. at 253 ("The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State."). Thornton calling AAA Colorado agents numerous times from Texas to discuss his renters policy is unilateral activity that does not create sufficient minimum contacts. This is because AAA Colorado's communication with a Texas resident alone is insufficient for personal jurisdiction because it rests on nothing but "the mere fortuity that [Thornton] happens to be a resident of the forum." See *Patterson v. Dietze, Inc.*, 764 F.2d 1145, 1147 (5th Cir.

1985) (holding that numerous telephones calls from defendant to forum are insufficient to support specific jurisdiction); *Holt Oil & Gas Corporation v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986), *cert. denied*, 481 U.S. 1015 (1987) (finding that no specific jurisdiction despite "'extensive telephonic and written communication' with a Texas resident").[8]

This case is similar to *CNA Holdings, Inc. v. Kaye Scholer LLP*, No. 3:08-CV-1032-B, 2008 WL 11349752 (N.D. Tex. Oct. 10, 2008) (Boyle, J.). *CNA Holdings* was a malpractice suit between a law firm and its former client over alleged mishandling of discovery. *Id.* at *1. CNA Holdings was originally headquartered in New Jersey, which is where it retained the law firm defendant Kaye Scholer. *Id.* at *2, n.2. In 2005, CNA Holdings relocated its headquarters to Texas, but CNA Holdings continued to retain Kaye Scholer to work on a multi-district litigation case. *Id.* at *2-3. The court held there was no specific jurisdiction over Kaye Scholer because Kaye Scholer's performance of the contract centered on activity outside of

---

[8]     The Thorntons cite *Memorial Hospital System v. Fisher Insurance Agency, Inc.*, 835 S.W.2d 645, 650-52 (Tex. App. – Houston [14th Dist.] 1992, no writ), to support their argument that a single phone call is sufficient for purposeful availment. This case is inapposite for two reasons. First, the Texas Supreme Court expressly disapproved of *Memorial Hospital* in a subsequent opinion. *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 791-92, 792 n.81 (Tex. 2005)("For the reasons stated above, we disapprove of those opinions holding that [ ] specific jurisdiction is necessarily established by allegation of evidence that a nonresident committed a tort in a telephone call from a Texas number."). Second, even if the Texas Supreme Court approved of *Memorial Hospital*, which it does not, this court would still be bound by Fifth Circuit precedent.

Texas and any communications to or from Texas "were simply a consequence of the fortuitous fact" that CNA Holdings chose to relocate to Texas.  *Id.* at *7.

As in *CNA Holdings*, the Thorntons contracted with AAA Colorado outside of Texas.  See *id.* at *1; Complaint ¶ 14.  The renters policy was discussed, purchased, and executed in Colorado.  *See* Complaint ¶¶ 14-15.  Both Kaye Scholer and AAA Colorado were aware in advance that the plaintiffs were moving to other states yet any communications with Texas residents "were simply a consequence of the fortuitous fact" that the plaintiffs had chosen to relocate to Texas.  See *CNA Holdings*, 2008 WL 11349752, at *6-7.

Overall, AAA Colorado sold an insurance policy in Colorado to then-Colorado residents, who later moved out of state and needed to communicate with employees in Colorado to ask policy questions and to cancel the policy.  *See* Renters Policy; *see also* September Recording.  Thus, the Thorntons failed to produce evidence or plead facts that show that AAA Colorado directed any act towards Texas because the phone calls, without more, are insufficient.  The court concludes that AAA Colorado does not have sufficient minimum contacts with Texas for the exercise of specific jurisdiction.

The Thorntons' tort theory is also lacking.  The Thorntons cite *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 212 (5th Cir. 1999), for the proposition that "[w]hen a tortfeasor commits a tort in the forum state by directing its actions toward

- 19 -

the forum state with full knowledge that the injury will occur in the forum state, jurisdiction is appropriate."[9]  Response ¶ 27.

It is well established that intentional torts "expressly aimed" at the forum state create sufficient minimum contacts for specific jurisdiction.  See *Calder v. Jones*, 465 U.S. 783 (1984).  In *Calder*, the Supreme Court held that there was personal jurisdiction over the defendants when a journalist wrote a defamatory article in Florida which he knew would affect the plaintiff's reputation in California.  *Id.* at 788-89, 791.  The Court held that the defendants were charged with intentional, tortious conduct directed towards the forum state, and in those circumstances, the defendant must "reasonably anticipate being haled into court there to answer for the truth of the statements made in their article."  *Id.* at 789-90 (internal quotations omitted).

The Fifth Circuit has since recognized that "the Supreme Court did not intend the *Calder* 'effects' test to apply only to libel cases."  *Guidry v. United States Tobacco Company, Inc.*, 188 F.3d 619, 629 (5th Cir. 1999) (citations omitted).  In *Guidry*, the Fifth Circuit held that the "effects" of intentional and nonintentional torts causing death or serious physical harm are as "'pronounced' as the merely economic and emotional consequences of libel."  *Id.* at 629.  Thus, when acts committed outside of

---

[9]    The plaintiffs attribute this quotation to the Fifth Circuit in *Wien*, but the court could not find it in the opinion.  See *Wien*, 195 F.3d 208.  Nor did the quotation populate a result in a Westlaw or Lexis search.

a forum create effects that are seriously harmful and were intended or highly likely to follow from the defendant's conduct, there is personal jurisdiction. *Id.* at 628-29; *see also Moncrief Oil International Inc. v. OAO Gazprom*, 481 F.3d 309, 314 (5th Cir. 2007). Such jurisdiction is rare. *Moncrief Oil*, 481 F.3d at 314. The Fifth Circuit has declined to exercise jurisdiction over an intentional tort when the only jurisdictional effect was the alleged harm to a Texas resident. *See Panda Brandywine*, 253 F.3d at 870.

Here, the Thorntons' argument that AAA Colorado's tortious activity was purposefully directed at Texas is unconvincing. In the complaint, the plaintiffs allege that AAA Colorado made "misrepresentations regarding the Renters Policy" in violation of the Texas Insurance Code and Texas Deceptive Trade Practices Act, which has resulted in "economic losses." Complaint ¶¶ 29-30. The Thorntons also assert a claim based on violations of the Colorado Consumer Protection Act because AAA Colorado "engaged in unfair and deceptive trade practices by misrepresenting the benefits and terms of the Renters Policy," which resulted in "economic losses." *Id.* ¶¶ 34, 36. Lastly, the Thorntons claim that AAA Colorado's failure to provide sufficient coverage for their move or inform them that such coverage could not be provided is negligence. *Id*. ¶¶ 39-43. In sum, the Thorntons allege that AAA Colorado's out-of-state actions were negligent and resulted in their economic loss in Texas. This is exactly the type of case *Panda Brandywine* forecloses. *See Panda*

- 21 -

*Brandywine*, 253 F.3d at 870 ("If we were to accept Appellants' arguments, a nonresident would be subject to jurisdiction in Texas for an intentional tort simply because the plaintiff's complaint alleged injury in Texas to Texas residents regardless of the defendant's contacts . . . Such results would complete vitiate the constitutional requirement of minimum contacts and purposeful availment.").  Nonresident defendants are not subject to jurisdiction in a tort case simply because the plaintiffs alleged injury in Texas to Texas residents – courts must still engage in due process analysis of the defendant's contacts with the forum.  *Id.*  And here, the court concludes that AAA Colorado's contacts with the forum are insufficient.

Additionally, "effects" jurisdiction have only been recognized in nonintentional torts cases that have resulted in death or serious physical harm.  *Guidry*, 188 F.3d at 629.  Here, the Thorntons only allege economic harm.  Complaint.  The plaintiffs do not point to a case where economic harm resulting from negligent misrepresentation resulted in an extension of *Guidry*.  Nor do the Thorntons allege that they were intentionally defrauded or otherwise intentionally harmed by AAA Colorado and its agents.  See *id*.

Not only does the type of claim and injury not fit within the *Calder* effects doctrine, but also the Thorntons do not plead that AAA Colorado's actions affect Texas, other than their own harm.  The "effects" of the defamatory remarks *Calder* considered in its jurisdictional analysis included not only the effects of the plaintiff's

emotional distress but also her professional reputation in the forum state. *Calder*, 465 U.S. at 788-89. Again in *Guidry*, the Fifth Circuit considered both the "effects" on the plaintiffs and the "other citizens and public and private entities, in the state in which they live." *Guidry*, 188 F.3d at 630. The effects on the plaintiff alone is not sufficient for personal jurisdiction. See also *Walden v. Fire*, 571 U.S. 277, 287-88 (2014) ("The crux of *Calder* was that the reputation-based "effects" of the alleged libel connects the defendants to California, not just to the plaintiff."). And here, the Thorntons do not allege an effect on Texas other than their own economic loss.

Moreover, the fact that Thornton told AAA Colorado agents his intended use for the renters policy – to move to Texas – does not change this analysis. While AAA Colorado's knowledge or awareness may make the injury in Texas foreseeable, it does not make the defendant's action directed specifically toward Texas. See *Wien Air*, 195 F.3d at 212 ("Foreseeable injury alone is not sufficient to confer specific jurisdiction, absent the direction of specific acts toward the forum."). Consequently, the Thorntons' tortious purposeful availment theory fails, and the court concludes that it does not have jurisdiction over AAA Colorado.

Because the court has concluded that AAA Colorado lacks sufficient minimum contacts with Texas, the court does not need to reach the question of whether the exercise of jurisdiction over AAA Colorado would offend "traditional notions of fair

- 23 -

play and substantial justice." *International Shoe Company v. State of Washington*, 326 U.S. 310, 316 (1945) (citations omitted).

## III.  <u>CONCLUSION</u>

For the reasons stated above, AAA Colorado does not have sufficient minimum contacts with the state of Texas to be subject to personal jurisdiction in this court. Therefore, AAA Colorado's motion to dismiss for lack of personal jurisdiction is **GRANTED**.  A judgment of dismissal for lack of personal jurisdiction over AAA Colorado will be entered.

**SO ORDERED**.

August 8, 2023.

**A. JOE FISH**
**Senior United States District Judge**

- 24 -